ARAM DICRANIAN *v.* CARL FOSTER ET AL.

January Term, 1946.

Present: MOULTON, C. J., SHERBURNE, STURTEVANT, JEFFORDS, J.J., and CLEARY, Supr. J.

Opinion filed February 5, 1946.

*Christopher A. Webber* for the defendant.

*Franklin P. Jones* and *Leonard W. Morrison* for the plaintiff.

MOULTON, C. J. At or shortly before midnight on August 12, 1943, on Route 7 in Pownal, the half-ton truck driven by the defendant Casavant collided with the automobile owned and driven by the plaintiff causing the damages for the recovery of which this action was brought. At the time of the accident the defendant Foster was sitting beside Casavant, in drunken slumber.

The trial was by jury, with verdict against both defendants, but Foster alone has brought the cause before us on exceptions.

The defendants were employees of Kramer and Halpern, dealers in fruit and produce in Holyoke, Massachusetts. Foster was a truck driver, and Casavant a helper. On the morning of August 12 Casavant did not report for work because his cousin was home on leave from the navy and he wished to be with him. A little after one o'clock in the afternoon, the two met Foster who was with the truck, which was the property of his employers, and assisted him in making his deliveries of merchandise. During this time and later they stopped at various taverns and drank an undetermined quantity of beer. When they returned to the premises of Kramer and Halpern it was after closing time and no one was about, so they took the truck and drove to South Hadley, Massachusetts, where they obtained gasoline. Casavant testified that on the way back to Holyoke, Foster remarked that he had friends in Burlington, Vermont, and asked the others whether they wanted to go there. Casavant's cousin made no recorded response, but Casavant accepted the invitation. Foster testified that he was "foggy" with drink and remembered nothing about any mention of friends in Burlington, or about anything that happened after he left Holyoke, but, after the accident, he made a statement to a motor vehicle inspector that on that afternoon he decided that he would go to Burlington, did not know exactly why, but thought it was probably to see his father who lived there The three drove to Northampton, Massachusetts, where they stopped to eat, after which the cousin, with more prescience than the others seem to have possessed, said that "he just wouldn't get into the truck any more" and took his leave of the others and returned to Holyoke. Foster and Casavant went on to Pittsfield Massachusetts, and from that point, at least Casavant drove, to use his own words "he (Foster) let me drive." Foster testified that he never asked Casavant to drive, and denied that the latter drove the truck while making the deliveries, but in his statement after the accident, as the Inspector testified, he said that he was so drunk that everything was foggy and the last he remembered was letting Casavant finish driving for him so that he could get the orders delivered in Holyoke. He testified that he and Casavant drank together at each place they visited during the afternoon.

The court instructed the jury that, under the circumstances as disclosed by the evidence, if either defendant was liable, they were

jointly liable; that the verdict must be either in favor of both defendants, or against both of them; and that there was no several liability in the case. An exception was taken to this charge on the ground that there was no evidence upon which Foster could be held liable as he was not the driver of the truck or the master of Casavant or in any way directing the operation of the truck or engaged in a joint enterprise with Casavant; and upon the further ground that, if there should be evidence that Foster was the master of Casavant, it could not be held as a matter of law that he was jointly liable with Casavant because there was evidence that he did not know that Casavant was driving at any time.

The instruction cannot be justified upon the theory that the defendants were engaged in a joint enterprise. Although there may be decisions to the contrary in other jurisdictions, our rule is that in cases of this nature the doctrine of joint enterprise is peculiar to contributory negligence and may be invoked only as imputing to a plaintiff the negligence of another for whom he is responsible. *Giguere* v. *Rosselot,* 110 Vt 173, 182, 3 A2d 558; *Campbell* v. *Campbell,* 104 Vt 468, 471, 162 A 379, 85 ALR 626.

It was not, however, necessary that the relation of master and servant should exist between the defendants in order that they might be held jointly liable.

In the Restatement of Torts, § 308, the rule is stated that: "It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." An illustration under comment (b) to the above section is giving permission to drive an automobile to one who is drunk, or known to get drunk. And § 390 of the same volume is as follows: "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them." This Section is quoted and relied upon as authority for holding one who has per-

mitted an intoxicated or otherwise incompetent person to use his automobile liable for injuries caused by the latter's operation of the car in *Rounds* v. *Phillips,* 166 Md 151, 170 A 532, 533, 168 Md 120, 177 A 174, 175, and in *Priestly* v. *Skourup,* 142 Kan 127, 15 P2d 852, 100 ALR 916, 917. Other decisions to the same effect are, *Gordon* v. *Rooney,* 160 Ore 621, 87 P2d 209, 120 ALR 1298, 1306; *Wilson* v. *Brauer,* 97 NJL 482, 117 A 699, 700; *Gresley* v. *Cunningham,* 116 Conn 515, 165 A 678, 679 and *Mitchell* v. *Churches,* 119 Wash 547, 206 P 6, 36 ALR 1132, 1135. In the last cited case the Court said: "We consider it not only common sense, but common law and justice, that one cannot let or loan to another, knowing that other to be reckless and incompetent, an instrumentality which may be a very dangerous one in charge of such a person."

 This liability exists aside from any relationship of master and servant between the parties; it arises out of the combined negligence of both, the negligence of one in entrusting the automobile to an incompetent driver and of the other in its operation. *Priestly* v. *Skourup, supra; Mitchell* v. *Churches, supra; Rounds* v. *Phillips, supra,* p. 536 of 170 A; *Parker* v. *Wilson,* 179 Ala 361, 60 S 150, 43 LRANS 87, 90; Berry on Automobiles, 6th Ed para. 1327: and see note, 38 Harv. Law Rev. 122.

The principles stated above are recognized and applied in *Giguere, Admr.* v. *Rosselot et al,* 110 Vt 173, 3 A2d 538, in which case a father and minor son were joined as defendants. It was alleged in the complaint that the father negligently entrusted and made accessible to his son a rifle and ammunition of which the son took possession and negligently discharged whereby the plaintiff's intestate was killed. It was held on demurrer that the allegations showed negligence on the part of the father in entrusting or making a firearm accessible to a minor child who lacked the capacity properly to use it, and that there was no misjoinder of defendants, since the claim that if the father had employed the son to use the rifle he could not be joined with the son in the action was not applicable. It is said (p. 181) that "where the separate and independent acts or negligence of several persons by concurrence produce a single and indivisible injury which would not have occurred without such concurrence, each is responsible for the entire result, and may be sued jointly or severally, at the election

of the party injured. In such case, the act or neglect of each is a proximate and efficient cause, and when several proximate causes contribute to an injury, and each is a sufficient cause, without the operation of which the injury would not have been caused, it may be attributed to any or all of such causes."

The defendant Foster argues that his testimony that he did not ask Casavant to drive the truck is uncontradicted and has the effect of disassociating him with the conduct of the latter and claims that the only reasonable inference to be drawn is that Casavant voluntarily took over the operation of the vehicle when he (Foster) had become too drunk to continue driving. But, as we have seen, an express request is not necessary; a mere permission to operate is enough. Foster's testimony is indeed of slight credibility in view of his insistence that he remembered nothing of what happened after leaving Holyoke, but Casavant's testimony that Foster let him drive shows a permission to do so and is not contradicted. Foster was not relieved by his own voluntary intoxication from the exercise of the degree of care required of a sober man in the same circumstances. *Burleson* v. *Morrisville Lumber and Power Co.*, 86 Vt 492, 497, 86 A 745; *Powell* v. *Berry*, 145 Ga 696, 89 SE 753, LRA 1917 A 306, 308, and annotation p. 313. He knew of the previous potations of Casavant for he had joined in them. He knew, or should have known, that an automobile, while not an inherently dangerous machine, is capable of doing great damage unless care is exercised in its management. *Aiken* v. *Metcalf*, 90 Vt 196, 198, 97 A 669; *Wilson* v. *Brauer*, 97 NJL 482, 117 A 699, 700. He did not own the truck and his possession of it was wrongful since it was not being used in the course of his employer's business or with their consent, but this does not affect the question of his liability. His negligence in entrusting the operation of it to Casavant, when he knew or should have known of Casavant's condition, combined with the latter's negligence in driving while in that condition and so causing the accident, would make them jointly liable.

In what has been said only the grounds of the exception as stated on trial and as briefed and argued here have been considered. Whether the instruction, which was given as a matter of law, could be upheld as against an exception upon the ground that the evidence did not conclusively show that Casavant's in-

dulgence in intoxicating liquor had deprived him of the full control of his faculties of mind and body, according to the test given in *State* v. *Storrs,* 105 Vt 180, 184, 163 A 560, or that the accident was proximately caused thereby, and hence that there were · jury issues on either or both of these points, we express no opinion. Where specific objections are made below the excepting party is confined to them here. *Valiquette* v. *Smith,* 108 Vt 121, 124, 183 A 483; *State* v. *Orlandi,* 106 Vt 165, 174, 170 A 908. We do not consider grounds of exception which have not been presented to the trial court. *Page* v. *McGovern,* 110 Vt 166, 173, 3 A2d 543 and cas. cit. And we will not search the record for grounds upon which to predicate error. *Turner* v. *Bragg,* 113 Vt 393, 399, 35 A2d 366; *Utley* v. *School District of Woodbury,* 110 Vt 522, 528, 9 A2d 117.

Only one other exception is briefed. It was taken to the denial of a motion to set aside the verdict. The issue is the same as that raised by the exception to the charge, which has been considered, and so nothing further need be said concerning it.

*Judgment affirmed.*