## 53774. PUGMIRE LINCOLN-MERCURY, INC. v. SORRELLS et al.

Argued April 7, 1977 — Decided May 13, 1977 — Rehearing denied May 31, 1977 —

*Hurt, Richardson, Garner & Todd, T. Cullen Gilliland, R. Dennis Withers,* for appellant.

*Brinson, Askew & Berry, Robert M. Brinson, C. King Askew, Robert N. Farrar, Kinney, Kemp, Pickell, Avrett & Sponcler, L. Hugh Kemp, John D. Edge,* for appellees.

Deen, Presiding Judge.

1. The motion to dismiss the appeal is denied. Code Ann. § 6-803 (a).

2. The gravamen of recovery against Pugmire is for the negligent entrustment of the Ford automobile to Worley, thereby creating a dangerous instrumentality. *Burks v. Green,* 85 Ga. App. 327 (69 SE2d 686). Pugmire's first enumeration of error is that the evidence, documentary and otherwise, establishes that at the time of the crash the car was owned by Worley and that Pugmire, as vendor rather than owner, has no liability under an entrustment theory. We do not rule on this enumeration because even assuming without deciding that an action in negligent entrustment is cognizable against a vendor, the facts of this case demonstrate that the verdict and judgment against Pugmire must fall. For pretermitting the question of whether or not the evidence shows a "sale" and that a "sale" is an entrustment, it is fundamental that there must be evidence that the vehicle was "entrusted" with *actual knowledge* of the intended driver's incompetence. *Harris v. Smith,* 119 Ga. App. 306, 307 (167 SE2d 198).

The only evidence of Worley's consumption of alcohol prior to his acquisition of the automobile was through the testimony of his associate Ray. While he testified that Worley had consumed a quart of liquor earlier on the day in question, Ray also said Worley did not drink while at Pugmire. Ray also stated that Worley had a great capacity for liquor and was not slurring his words or staggering at the time he was at the Pugmire lot; that when they left Marietta Worley was not driving recklessly or improperly; and that in all respects he considered Worley to be perfectly competent and fit to operate an automobile. Indeed, the only evidence in the record as to Worley's physical manifestation of intoxication was Ray's testimony that he smelled alcohol on Worley "that day"; but when questioned as to whether he smelled alcohol on Worley *at Pugmire,* Ray stated: "I didn't have to smell it. I knew he was drinking cause I seen him turn it up. I knew he was."

The used car manager at Pugmire, where Worley had been trading since 1966, swore that he knew nothing about Worley's drinking habits, that he had never smelled alcohol on his breath, that he had never been drinking with him, and that on the day in question

Worley, whom he knew as a "jolly sort of person," seemed normal to him and gave no impression he had been drinking. Another employee of Pugmire who saw Worley on the lot that day also testified that Worley seemed normal to him and did not appear to have been drinking. And an employee of Kelly Chrysler-Plymouth, where Worley went after he left Pugmire, testified that when he saw Worley he noticed nothing unusual about him and there was nothing that indicated he was or had been drinking. The record is silent as to any other stops Worley may have made in the two and a half hour period after he left Pugmire before his death. However, it might be inferred from Ray's testimony that Worley drank all but about an inch of the whiskey in the bottle he bought that morning, and from testimony that a half-empty bottle of whiskey was found in the car after the collision, that Worley purchased a second bottle after leaving Kelly Chrysler-Plymouth.

Plaintiffs introduced without objection depositions and a lab report made by Dr. C. O. Sennett, a qualified pathologist, and a lab technician, attempting to establish that Worley's blood alcohol content at the time of his death was .22 grams. However, neither Dr. Sennett nor the technician actually procured the blood sample alleged to have been taken from Worley and neither could testify as to the manner or method by which it was taken, only that it was brought to them in Rome by someone named Jack Hughey and that the tube was labeled with Worley's name. Therefore their testimony and conclusions were based totally upon hearsay and such evidence does not become competent by reason of a mere failure to object to its reception. *Becton v. State,* 134 Ga. App. 100, 101 (213 SE2d 195) (1975). Since the reliability of the procedures used in obtaining and analyzing the blood was inadequately shown, evidence of the chemical analysis was inadmissible. *Pittman v. State,* 110 Ga. App. 625 (1) (139 SE2d 507) (1964); *Unigard Ins. Co. v. Elmore,* 137 Ga. App. 665 (2) (224 SE2d 762) (1976). Moreover, this evidence would only have established Worley's blood alcohol content *at the time of the collision,* not at the time of the transaction at Pugmire, and was therefore irrelevant as to the negligent entrustment issue, even if

admissible.

Thus the only evidence as to Worley's state of intoxication showed that he was 5 feet 6 inches tall and weighed 280 pounds, was a man who "could drink a lot of liquor," and also that he had consumed four Lum's hot dogs with sauerkraut and several Coca-Colas plus whatever he may have had for breakfast. As explained by Dr. Sennett, alcohol is basically a central nervous system depressant which acts in a variable manner on different people "depending upon the size of the person and other factors," such as metabolism. Clearly the effect of alcohol on anyone, particularly a man of Worley's excessive size and unknown metabolic rate, is a complex physiological reaction which is not subject to lay speculation but must be analyzed by an expert.

Since there was no expert evidence to establish that Worley was intoxicated at any time and no circumstantial evidence as to traffic violations, police records, prior collisions or insurance coverage cancellation known to Pugmire as in *Thompson v. Bolton Chevrolet Co.*, 125 Ga. App. 369 (187 SE2d 574) (1972) and cits., Ray's testimony that Worley had been drinking *earlier* was clearly insufficient to support a finding that he was incompetent, appeared incompetent or gave the impression of being incompetent *at the time he acquired the vehicles* from Pugmire. Accordingly, Pugmire's motion for directed verdict should have been sustained and it was error for the trial court to overrule it.

3. The result reached in Division 2 renders it unnecessary to rule on the remaining enumerations of error.

*Judgment reversed. Webb and Marshall, JJ., concur.*

DEEN, Presiding Judge. *Addendum.*

I would go further in this case and decide whether or not the "negligent sale" of an automobile amounts to a "negligent entrustment" thereof; in other words, whether a vendor with actual knowledge of the intended driver-vendee's incompetence to operate the vehicle may be held liable in tort if the driver-vendee negligently causes injury due to his incompetency.

The thrust of Pugmire's argument that it is not liable

as a vendor under an entrustment theory is predicated upon its belief that the supplier of a vehicle must be the owner thereof *at the time of the driver's negligence.* This principle is true enough in cases where the theory of recovery hinges on respondeat superior, but I do not feel that it is the law of "negligent entrustment."

Concededly all cases in this state involving the negligent entrustment theory deal with an *owner's* liability for *loaning* his vehicle with actual knowledge of the intended driver's incompetence to operate it. E.g., *Burks v. Green,* 85 Ga. App. 327 (69 SE2d 686). However, as I understand it, one who *had ownership or control* of the automobile at the time it was turned over to a known incompetent driver may be liable if the other elements of the tort exist. *Glover v. Davenport,* 133 Ga. App. 146, 147 (210 SE2d 370). Thus what is required is that the defendant *had* ownership at the time it was negligently supplied to an incompetent driver; there is no requirement that the defendant *have* ownership at the time of the driver's negligence so long as he *had* ownership or control at the time he himself was negligent in turning the vehicle over to a driver actually known to be incompetent.

"[O]ne *who turns an automobile over* to another for his own use, knowing such other is incompetent to drive the same, may be held liable by third persons who suffer injuries proximately resulting from such incompetent driving." *Burks v. Green,* 85 Ga. App. p. 329, supra. (Emphasis supplied.) One may turn over an automobile by sale as well as by loan; the mere fact that all cases in Georgia thus far have dealt with an owner's, rather than a vendor's, liability does not mean conclusively that "negligent entrustment" is not a viable theory of recovery against a vendor with actual knowledge of the vendee's incompetence *existing at the time of the sale.* The Restatement of the Law 2d, Torts 314, § 390 supports this analysis, imposing liability against one who *supplies* a chattel *for the use of another* whom the supplier knows or from facts known to him should know to be likely to use it in a manner involving unreasonable risk of bodily harm to himself and others.

It is my opinion that when one supplies to another,

whether by sale or loan, an automobile and has actual knowledge of the intended driver's incompetence, then existing, to operate it and due to the driver's negligence bodily harm or death results, the supplier may be held liable in tort. Under this analysis Pugmire *could be* liable even if there were in fact a "sale" of the Ford if the sale were made with actual knowledge of Worley's incompetence to operate the vehicle through intoxication, said liability continuing "as long as the original incompetence of the driver continues. An intoxicated driver may become sober . . . [t]hen such original incompetence could no longer be a proximate cause of an accident and, therefore, the liability of the seller on this theory would no longer exist." Johnson v. Casetta, 17 Cal. Rptr. 81, 83. In such a case Pugmire would have negligently (with actual knowledge of Worley's intoxication) "turned over" an automobile over which it "had ownership (or control)." Here however, for the reasons amply set forth above, there is no evidence that Pugmire had actual knowledge of Worley's intoxication *at the time the car was turned over to him;* therefore the verdict and judgment finding Pugmire to have been negligent in supplying the vehicle cannot stand.