Roger PINKHAM, Sr. and Linda Blalock, Individually and as Next Friend of Carl Atwater, a minor, Appellants,

v.

APPLE COMPUTER, INC., Appellee.

No. 2–85–021–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 7, 1985.

Cox & Bader, and Bertran T. Bader, III, Dallas, for appellants.

Vial, Hamilton, Koch, Tubb & Knox, and Gerald R. Powell, Dallas, for appellee.

Before ASHWORTH, JOE SPURLOCK, II and HILL, JJ.

## OPINION

ASHWORTH, Justice.

This is an appeal from a summary judgment granted on the basis that there is no liability on the part of an employer for subsequent acts of negligence by an employee who became intoxicated at a company party for employees.

We agree that under the summary judgment evidence in this case, there is no liability on the part of the employer and affirm the judgment of the trial court.

Appellants, Roger Pinkham, Sr. and Linda Blalock, brought suit individually and as next friend of Carl Atwater, a minor, against Steven Wayne Denney and Apple Computer, Inc. (Apple) for damages resulting from the death of Roger M. Pinkham, Jr., son of Pinkham, Sr. and Blalock, and injuries to Carl Atwater, a minor. Appellants alleged Denney operated a motor vehicle in a negligent manner allowing it to strike a bicycle operated by Atwater with Pinkham, Jr. as a passenger; that Pinkham, Jr. was killed and that Atwater suffered serious injuries. It was alleged that Denney had attended a company party prior to the incident and Apple was negligent in: (1) furnishing intoxicating liquors to Denney; (2) furnishing intoxicating liquors to him after he was intoxicated; (3) failing to ascertain whether he was so intoxicated he could not properly drive before allowing him to leave the premises; (4) allowing him

to leave the premises while intoxicated; (5) failing to restrain him from leaving; and (6) failing to provide him an alternative means of transportation home.

Apple filed a motion for summary judgment. The motion is not included in the transcript before us, but the briefs of both parties indicate that it was granted on the basis that there was no duty on the part of Apple to control the off-duty, off-premises conduct of its employee, Denney. The trial court severed the action against Denney and dismissed as moot a cross action by Apple against the caterer who supplied the intoxicating liquor (beer), as well as the other food and drinks for the party. These actions resulted in a final judgment of dismissal of appellants' cause of action against Apple.

The summary judgment proof which the trial court had before it consisted of the answers to interrogatories made by Apple and the depositions of Denney, David Lietzke (Apple's Personnel Manager), James Gay (fellow employee), George Knowles (fellow employee), James Day (Denney's supervisor), and Lee Steele (an engineer employee).

Much of the summary judgment proof concerned the status of Denney as an employee. Apple was in need of some temporary help in its Maintenance Department and as a practice contracted with an employment service for additional temporary help. Denney was furnished by the employment service as a temporary employee; he worked along with regular employees and was subject to the same hours and conditions of employment. While he submitted to Apple records of hours worked, he also submitted such records to the employment service which paid him. He was not entitled to such company benefits as insurance, sick leave and vacation time. He had worked at Apple for a period of about five or six weeks at the time of the party. While there is no formal stipulation in the record before us, in their briefs and in oral argument the parties have agreed that for purposes of this appeal, Denney should be considered as an employee of Apple at the time of the party. It is undisputed that Denney was not in the course and scope of employment on the day in question.

The deposition of Apple's Personnel Manager, David Lietzke, shows the company party in question was a chili cook-off planned by Apple's Personnel Department. All employees, their families, and employees of certain sub-contractors were invited to attend and participate. Certain departments, including maintenance, set up booths and organized cooking teams. Apple furnished the ingredients for the chili; Butch Arnold and Associates, the caterer, furnished other food and drink, consisting of one thousand hot dogs, one thousand nachos, twelve hundred cold drinks, and twenty-four hundred beers. Keg beer was provided and served in twelve ounce cups. Service of the food and drink apparently began about 11:00 a.m.

In his deposition, Denney stated he arrived at the party site which was Apple's parking lot at about 8:00 a.m. Denney arrived early in order to assist in setting up the Maintenance Department booth. During the course of the day starting about 12:00 noon, he drank about ten or fifteen cups of beer and took three drinks of tequila furnished by an employee of a sub-contractor in the maintenance group. At about 1:00 p.m. Denney and a fellow employee went to the residence of the latter which was about four miles from the party site. Denney smoked one "joint of pot" at the residence and then the two of them returned to the party. Denney socialized and danced until he decided to leave the party at about 3:30 p.m.; he said goodbye to his supervisor, Day, and drove away as if his car "was on top of eggshells." Denney could not recollect anything that happened after that, but the collision with the bicycle occurred shortly thereafter about one mile away.

In his deposition, a fellow employee, James Gay, testified that he was an employee in the Maintenance Department. Gay saw Denney on several occasions at the party, and saw him for the first time at

about 10:30 or 11:00 a.m. Gay saw Denney for the last time about 2:00 or 3:00 p.m. when Denney was dancing in the parking lot without his shirt. Gay did not know whether Denney was intoxicated at the party.

The deposition of George Knowles, a fellow Maintenance Department employee, was taken. Knowles saw Denney for the first time at about 10:30 a.m. Denney was walking around visiting the various booths. Knowles saw Denney drinking beer and dancing with his shirt off. Knowles and Denney left the party at about 12:30 p.m., went to Knowles' residence which was two or three miles from the party site, and then they returned to the party about 1:00 or 1:15 p.m. Knowles drank from a bottle of tequila brought by another employee but could not testify Denney drank any tequila. Knowles thought Denney appeared to be intoxicated about 3:00 p.m. because of his manner of speaking and the appearance of his eyes. Denney was not stumbling, staggering, loud, or rowdy, but did take his shirt off. Knowles saw Denney backing out in his car to leave the party at about 4:00 p.m. Knowles believed he saw Denney's glasses on his car as Denney was backing out. Knowles went over to Denney, gave him his glasses, and inquired if Denney was going to be all right; Denney responded affirmatively.

The deposition of James Day, Denney's supervisor, was also before the trial court for summary judgment purposes. Day arrived at the party site about 6:00 a.m. on the day of the party to assist in setting up the equipment for the party. Day saw Denney several times during the day; most of the time Denney was just standing around or at different locations. At one time Day observed Denney dancing without his shirt. Day did not see Denney leave and did not observe him immediately before he left.

The deposition of Lee Steele, a facilities engineer employed by Apple, was also before the trial court for purposes of the summary judgment. Steele attended the party and first observed Denney dancing in front of the band about 2:00 p.m. without his shirt. He observed Denney on two or three other occasions later in the day. Steele believed Denney to be intoxicated because of his sloppy, uncoordinated movements and a distant, far-off look in his eyes. The last time he saw Denney was about 3:30 p.m. when Denney was backing his car out of the parking lot. Steele saw Denney's wallet and possibly his sunglasses on top of the car. Steele approached the car and told Denney his wallet and sunglasses were on top of the car. The items were either handed to Denney by Steele or Denney reached up and got them. Steele asked him if he was okay—if he was going home. Denney replied affirmatively and drove away.

Appellants' one point of error contends the summary judgment was granted in error because the summary judgment record established a duty of Apple toward appellant. Appellants base their contention on the fairly recent case of *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983). In *Otis*, the employee, Matheson, had a history of drinking on the job. On the occasion in question, Matheson, who was working the evening shift was allegedly going to his car from time to time in order to drink alcoholic beverages. Two co-workers noticed his condition, became concerned for his safety, and reported his condition to his supervisor, Roy. When Matheson returned from his dinner break, Roy suggested he go home. Roy accompanied Matheson to the parking lot, asked him if he was all right and if he could make it home. Matheson answered that he could. Thirty minutes later, about three miles from the plant, Matheson was involved in a collision in which two women were killed. *Id.* at 308.

In a five to four decision, our Supreme Court, speaking through Justice Kilgarlin, adopted a standard of duty: when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take

to prevent the employee from causing an unreasonable risk of harm to others. *Id.* at 311. The trial court had rendered summary judgment in favor of Otis; the Court of Appeals reversed, 633 S.W.2d 538, and such reversal was affirmed by the Supreme Court in its holding that a fact question existed as to whether Otis acted as a reasonable and prudent employer. A comprehensive dissenting opinion, authored by Justice McGee, discusses existing law in this and other jurisdictions concerning the duty of an employer under similar circumstances. The dissent in *Otis*, was based in part that there was insufficient evidence showing that Otis affirmatively acted to take control of Matheson and therefore, the first requirement of the standard was not satisfied.

■ We will first determine if the standard enunciated in *Otis* was satisfied in the instant case. There is no evidence that Apple, through any of its supervisory personnel, ever took any affirmative action to control Denney. It is true he drank beer and tequila, smoked a marihuana cigarette, danced without his shirt, had sloppy, uncoordinated movements and a distant, far-off look in his eyes. The nearest thing to control in the instant case is the action of Steele, a non-supervisory engineer employee, approaching Denney as he was leaving, advising him that his wallet and sunglasses were on top of his car and inquiring if Denney was all right. Day, Denney's supervisor, testified he had no knowledge that Denney was intoxicated. We hold there was no summary judgment evidence that Apple ever took any affirmative action to control Denney and therefore the first requirement of the *Otis* standard was not satisfied.

Appellants contend that because Apple provided an alcoholic beverage to Denney, which contributed to his intoxicated condition, it is liable for a failure to control his off-duty, off-premise actions. No Texas case is cited as support for such contention. We are referred to *Kelsey-Seybold Clinic v. Maclay*, 466 S.W.2d 716 (Tex.1971), a case in which a partnership was sued be-cause one of the partners alienated the affections of one of his patients. The Court held that the clinic owed a duty to the families of its patients to exercise ordinary care to prevent a tortious interference with family relations. It was not required to maintain constant surveillance over personnel on duty or to inquire into and regulate the personal conduct of partners and employees while engaged in their personal affairs. But if and when the partnership received information from which it knew or should have known that there might be a need to take action, it was under a duty to use reasonable means at its disposal to prevent any partner or employee from improperly using his position with the clinic to work a tortious invasion of legally protected family interests. This duty relates only to conduct of a partner or employee on the premises of the clinic or while purportedly acting as a representative of the clinic elsewhere. Failure to exercise ordinary care in discharging that duty would subject the clinic to liability for damages proximately caused by its negligence. *Id.* at 720.

The principles of *Kelsey-Seybold* concerning the duty of an employer do not apply in the instant case. Texas does not have a Dram Shop Act which imposes liability on the provider of alcoholic beverages for subsequent off-premises acts of negligence by patrons or guests. The gist of appellants' contention is that they seek the establishment by judicial decree of liability on a provider of alcoholic beverages for subsequent acts of negligence by an imbiber due to intoxication. This we refuse to do. The far-reaching consequences of creating such liability are readily apparent, and certainly the instant case is not a proper vehicle for creation of such a duty.

We have no doubt that Apple's chili cook-off was intended to have some benefit to the company, at least in the form of better employee morale and employer-employee relations. The affair was planned as a family social event; beer was just one of the drinks furnished along with other foods. We related earlier the amounts of food and drink ordered by Apple. While

the record does not disclose the number of people attending the cook-off, it is apparent that the amount of beer to be available was not disproportionate to the other food and drink. There are no facts present in the instant case which warrant imposition of any duty on Apple in excess of that presently existing under the law of this State.

 Appellants also contend that Denney's intoxication and subsequent negligent conduct in driving while intoxicated was a result of the use of his employer's chattels. The summary judgment evidence does not show that any of Apple's chattels were used by Denney or involved in the collision in any manner. The only chattel which could conceivably be said to be involved would be the beer consumed by Denney. Consumption of beer furnished by an employer at an employee party does not constitute use of the employer's chattels which would subject the employer to liability for negligent use of the chattel by the employee. Appellants' contention in this regard apparently is the same contention advanced which would establish a duty just because the employer furnished an alcoholic beverage. We have previously discussed and rejected such contention.

Judgment affirmed.