## Mark Vince v. Luella Wilson, Ace Auto Sales, Inc. and Gary Gardner, Pres., Ace Auto Sales, Inc.

[561 A.2d 103]

No. 87-117

Present: Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.

Opinion Filed April 21, 1989

426

*Peter M. Lawrence* and *Carolyn A. Campe* of *Barr, Sternberg & Moss, P.C.,* Bennington, for Plaintiff-Appellant.

*Frederick deG. Harlow* and *Herbert G. Ogden, Jr.* of *Harlow Liccardi & Crawford, P.C.,* Rutland, for Defendant-Appellant Luella Wilson.

*Gary R. Kupferer* of *Carbine, Pressly & Seager,* Rutland, for Defendants-Appellees Gardner and Ace Auto Sales, Inc.

**Mahady, J.** This personal injury action requires us to further refine our definition of the tort of negligent entrustment. Plaintiff, seriously injured in an automobile accident, brought suit against defendant Wilson, who had provided funding for her grandnephew, the driver of the car in which plaintiff was a passenger at the time of the accident, to purchase the vehicle. Subsequently Ace Auto Sales, Inc. and its president Gary Gardner were added as defendants. Ace sold the vehicle to the driver; Gardner was the salesman of the vehicle.

At the close of plaintiff's case, the trial court directed verdicts in favor of defendants Ace and Gardner. Plaintiff appeals from this ruling. The claim against Wilson, on the other hand, was submitted to the jury, which returned a substantial verdict in favor of plaintiff. Wilson appeals from the judgment entered against her on the jury verdict. For the reasons stated below, we hold that the trial court erred in directing verdicts in favor of Ace and Gardner. As to the judgment against Wilson, we affirm the court's decision to submit the question to the jury, and remand for proceedings consistent with this opinion.

I.

The tort of negligent entrustment has long been recognized in Vermont. See *Giguere* v. *Rosselot,* 110 Vt. 173, 179, 3 A.2d 538, 540 (1939). In *Dicranian* v. *Foster,* 114 Vt. 372, 45 A.2d 650 (1946), we noted that such "liability . . . arises out of the combined negligence of both, the negligence of one in entrusting the

automobile to an incompetent driver and of the other in its operation." *Id.* at 375, 45 A.2d at 652.

Plaintiff argues that the rule should be applied to a person who knowingly provides funding to an incompetent driver to purchase a vehicle and to a person who knowingly sells a vehicle to an incompetent driver. We have not previously had an opportunity to address this issue. In *Giguere,* the defendant negligently entrusted a firearm and ammunition to his child, who negligently discharged the firearm resulting in the death of the plaintiff's intestate. In *Dicranian,* the defendant negligently entrusted his motor vehicle to an incompetent operator whose negligent operation of the vehicle caused injury to the plaintiff.

Defendants urge us to follow those courts which have limited recovery under a claim of negligent entrustment to situations where the defendant "is the owner or has the right to control" the instrumentality entrusted. *Fugate* v. *Galvin,* 84 Ill. App. 3d 573, 575, 406 N.E.2d 19, 21 (1980). These courts have denied liability where a father sold a car to his son who was known to have a drinking problem but not a driver's license, *Tosh* v. *Scott,* 129 Ill. App. 3d 322, 472 N.E.2d 591 (1984); where a vehicle was given to an incompetent operator, *Sikora* v. *Wade,* 135 N.J. Super. 62, 342 A.2d 580 (1975); *Brown* v. *Harkleroad,* 39 Tenn. App. 657, 287 S.W.2d 92 (1955); or where a bailee automobile dealer returned an automobile after repair to its obviously intoxicated owner, *Sampson* v. *W.F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo. Ct. App. 1980).

Other courts have applied the rule more broadly. For example, courts have allowed recovery against an automobile dealer who sold a vehicle to an inexperienced and incompetent driver whose driving injured several people when the seller knew or should have known of the incompetency. *Johnson* v. *Casetta,* 197 Cal. App. 2d 272, 17 Cal. Rptr. 81 (1961); see also *Roland* v. *Golden Bay Chevrolet,* 207 Cal. Rptr. 413 (Cal. App. 1984). These courts hold that the fact that a defendant had ownership and control over the instrumentality at the time it was turned over to an incompetent individual is sufficient. See, e.g., *Pugmire Lincoln Mercury, Inc.* v. *Sorrells,* 142 Ga. App. 444, 448, 236 S.E.2d 113, 116 (1977). Thus, a father was held liable for funding the purchase of an automobile by a son whom the father knew to be an irresponsible driver, *Kahlenberg* v. *Goldstein,* 290 Md. 477, 431 A.2d 76 (1981), and a complaint against a father who pur-

chased a vehicle for his epileptic son was held to state a cause of action. *Golembe* v. *Blumberg,* 262 A.D. 759, 27 N.Y.S.2d 692 (1941).

Both lines of cases derive their rule from the Restatement of Torts, which provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965). The comments to the Restatement support those decisions which extend the rule to individuals such as sellers:

> The rule stated applies to anyone who supplies a chattel for the use of another. It applies to sellers, lessors, donors or lenders, and to all kinds of bailors, irrespective of whether the bailment is gratuitous or for a consideration.

*Id.,* comment a.

The cases noted above which restrict the rule to situations where the defendant is the owner or has the right to control the instrumentality have been severely criticized. See, e.g., Notes, 32 Chi. Kent L. Rev. 237, 239 (1954) ("liability in these cases arises not from ownership or agency but from the combined negligence of the owner in entrusting the vehicle to the incompetent driver and of the driver in carelessly operating the same"); 43 Ky. L.J. 178, 183 (1954) ("mere passing of title does not change the character of the negligence of the defendant, and . . . the law should not operate to relieve him of his responsibility for the natural and probable consequences of his own negligent act"); 29 N.Y.U. L. Rev. 530 (1954); 33 B.U.L. Rev. 538 (1953).

Indeed, the leading commentators on the law of torts have said that such decisions "look definitely wrong," explaining:

> It is the negligent entrusting which creates the unreasonable risk; and this is none the less when the goods are conveyed.

Prosser and Keeton on Torts § 104, at 718 (5th ed. 1984). Seen in this light, the issue is clearly one of negligence to be determined by the jury under proper instruction; the relationship of the defendant to the particular instrumentality is but one factor to be considered. The key factor is that "[t]he negligent entrustment theory requires a showing that the entrustor knew or should have known some reason why entrusting the item to another was foolish or negligent." *Mullins* v. *Harrell*, 490 So. 2d 1338, 1340 (Fla. Dist. Ct. App. 1986). This approach, based upon traditional negligence analysis, is consistent with our prior decisions in *Giguere* and *Dicranian* as well as that in *LaFaso* v. *LaFaso*, 126 Vt. 90, 95, 223 A.2d 814, 819 (1966). It is also supported by analogy with our recent decision, *Langle* v. *Kurkul*, 146 Vt. 513, 510 A.2d 1301 (1986).

## II.

With regard to plaintiff's claim against defendant Wilson, we must view the evidence in the light most favorable to plaintiff because of the jury's verdict in plaintiff's favor. *Lowe* v. *Beaty*, 145 Vt. 215, 216, 485 A.2d 1255, 1256 (1984). With regard to plaintiff's claims against defendants Ace and Gardner, the trial court directed a verdict in favor of the defendants; as such, we must view the evidence in the light most favorable to plaintiff, excluding the effect of any modifying evidence. *Utzler* v. *Medical Center Hospital of Vermont*, 149 Vt. 126, 128, 540 A.2d 652, 654 (1987).

So viewed, the evidence indicates that Wilson knew that the operator for whom she provided funding to purchase the vehicle had no driver's license and had failed the driver's test several times. Indeed, she communicated this fact to defendant Gardner, an agent of defendant Ace, prior to the sale of the vehicle. Defendant Wilson was also aware of the fact that her grandnephew abused alcohol and other drugs. The evidence also tended to show that the operator's inexperience and lack of training contributed to the accident which caused plaintiff's injuries. The evidence was sufficient to make out a prima facie case of negligent entrustment, and the trial court properly submitted the question to the jury.

Verdicts should not have been directed in favor of defendants Ace and Gardner, however. There was evidence which, if believed by the jury, would establish that they knew the operator

had no operator's license and that he had failed the driver's test several times. Viewed in the light most favorable to plaintiff, the evidence tends to demonstrate negligence on the part of Ace and Gardner, and the issue should have been determined by the jury. See *Currier* v. *Letourneau,* 135 Vt. 196, 201, 373 A.2d 521, 525 (1977).

In light of the above, we remand to the trial court for further proceedings. We deem it appropriate that the parties have the opportunity to brief, and the court the opportunity to determine, the issues that may be raised in subsequent proceedings in view of this order and 12 V.S.A. § 1036.

## III.

The trial judge submitted plaintiff's claim against defendant Wilson to the jury on two distinct theories of liability. In addition to the theory of negligent entrustment, he charged the jury that liability might also be predicated upon a statute, 23 V.S.A. § 1130.*

Defendant Wilson argues that the submission of the case under 23 V.S.A. § 1130 constituted reversible error. However, as set forth above, there was no error in submitting the claim under a theory of negligent entrustment. Special interrogatories to the jury, V.R.C.P. 49, were not requested and were not used.

Therefore, we will not consider this claim of error. Our present rule provides:

> [I]n civil cases such as this, involving multiple independent theories of liability, defendants who lose at trial may attempt on appeal to establish prejudicial error in either of two ways: They must show error affecting all theories of recovery, or they must show error affecting an individual theory upon which the jury relied. Here, the [defendant] cannot do the latter, since [she] did not request a special verdict or interrogatories. [She] must, accordingly, establish error that undermines all theories of liability submitted to the factfinder. If any single theory of recovery is untainted by error, we will affirm . . . .

---

* That statute provides, in pertinent part, that "[n]o person shall knowingly employ, as operator of a motor vehicle, a person not licensed as provided [by statute]."

*Contractor's Crane Service, Inc.* v. *Vermont Whey Abatement Authority,* 147 Vt. 441, 446, 519 A.2d 1166, 1171 (1986) (footnote omitted).

*Cause remanded for further proceedings not inconsistent with this opinion.*