Anna Poplaski, Individually and as Administratrix of the Estate of Stanley J. Poplaski, Jr. v. Mark K. Lamphere, Mary P. Chesley, Administratrix of the Estate of George W. Chesley, International Business Machines Corp., Michael Lamphere, and Andrea Lamphere

[565 A.2d 1326]

No. 87-479

Present: Peck, Gibson and Dooley, JJ., and Connarn, D.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed August 4, 1989

*John H. Bloomer* of *Bloomer & Bloomer, P.C.*, Rutland, for Plaintiff-Appellant.

*John D. Monahan, Jr.* and *Robert L. Sand* of *Dinse, Erdmann & Clapp*, Burlington, for Defendant-Appellee.

**Gibson, J.** Plaintiff appeals the trial court's granting of summary judgment in favor of defendant International Business Machines Corporation (IBM). We affirm.

The facts stated by the trial court in its opinion are not in controversy. On the morning of March 25, 1984, plaintiff's husband was the passenger in a car being driven by George W. Chesley, whose estate is a named defendant. While driving down Route 2A in the town of St. George, their car was struck by an automobile driven by defendant Mark Lamphere. Both Poplaski and Chesley died as a result of injuries sustained in the collision.

On the evening before the accident, defendant Lamphere attended a party hosted by his brother and sister-in-law, defendants Michael and Andrea Lamphere. During the course of the evening and into Sunday morning, March 25th, he drank by his own admission approximately twelve beers. He left the party at 4:00 in the morning and returned home. About two hours later, Lamphere left his house and drove to the IBM plant, where he was employed as a test-equipment mainte-

nance technician, in order to work an overtime shift scheduled for 6:00 a.m. to 12:00 noon.

When he got to work at 6:30 a.m., Lamphere did not report to a supervisor; he stated in his deposition that he was not required to do so. Instead, he spoke with one or two co-workers and checked a computer printout to see if any test equipment needed maintenance. None did. About two hours later, there still being no equipment in need of work, Lamphere decided to go home because he was not feeling well. He did not seek permission to do so from supervisory personnel; instead, he told one of his co-workers that he wanted to leave. The co-worker assured Lamphere that he could cover the remainder of the shift. The accident between Lamphere, who was driving his own car, and the car driven by Chesley occurred while Lamphere was on his way home.

Plaintiff sued Lamphere, Chesley's estate, the hosts of the party at which Lamphere became intoxicated (Michael and Andrea Lamphere), and IBM, Lamphere's employer. The cause of action against IBM was premised on three theories of negligence:

   (1) IBM "negligently directed or negligently allowed" Lamphere to leave the plant when it knew or should have known of his intoxicated state;
   (2) IBM negligently exercised-control over Lamphere; and
   (3) IBM negligently entrusted Lamphere with the operation of an automobile when it knew or should have known of his intoxication.

IBM moved for summary judgment, asserting that there was no genuine issue as to any material fact and that, as a matter of law, none of the evidence produced by plaintiff supported the existence of negligence on IBM's part. V.R.C.P. 56(c). The trial court granted the motion, and plaintiff appeals.

The primary issue on appeal, as framed by plaintiff, is whether an employer can be held responsible in a negligence action where its employee has been allowed to leave the workplace in an intoxicated state. As a side issue, plaintiff contends that she was precluded from obtaining full discovery in the form of depositions prior to the trial court's decision on the motion for summary judgment. We will address the latter issue first.

I.

Plaintiff contends that the grant of summary judgment was erroneous as a matter of law because she had raised issues of fact in her pleadings and deposition of defendant Mark Lamphere, portions of which were submitted to the trial court in response to IBM's motion. In addition, plaintiff argues that she was not allowed to complete discovery before the court ruled on that motion, so that it did not consider the depositions of other IBM employees in making its decision. Those depositions, she claims, also raise issues of fact which should have precluded summary judgment.

The complaint in this case was filed on March 24, 1986. IBM's motion for summary judgment was not filed until November of that year, more than seven months later, and well after discovery had been embarked upon by the various defendants. A pretrial conference was held in late November, at which time a discovery schedule was adopted by all attorneys and incorporated into a pretrial order. That agreement provided that all depositions were to be completed by August 1, 1987 and that IBM's motion for summary judgment would be set for hearing after that date. On December 8, 1986, the court notified the parties that the summary judgment hearing was scheduled for August 4, 1987.

Despite this pretrial order, plaintiff deposed only defendant Mark Lamphere before the August 1, 1987 cutoff date. On August 3, 1987 she deposed several other IBM employees. It appears that transcripts of those depositions were not before the trial court when it decided the motion (although counsel for IBM represented at oral argument that the trial court was aware of the depositions and their content before its decision was rendered). On July 31, 1987, however, four days before the hearing was scheduled, plaintiff moved for a continuance so that she could have an opportunity to complete her depositions. The trial court denied the motion, concluding that "plaintiffs had ample time to develop their side of the case since IBM filed its motion" in late 1986.

█ Summary judgment is mandated under the plain language of V.R.C.P. 56(c) where, after an adequate time for discovery, a party "fails to make a showing sufficient to establish the existence of an element" essential to his case and

on which he has the burden of proof at trial. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (construing Fed. R. Civ. P. 56(c)).\* The issue here, then, is whether plaintiff had adequate time for discovery before the trial court ruled on IBM's motion for summary judgment.

■ V.R.C.P. 26(b)(1) specifically permits the superior court to limit discovery if "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought." As with other decisions involving the trial court's discretion, we will not disturb its ruling unless it is shown that such discretion was abused or entirely withheld. See, e.g., *Castle v. Sherburne Corp.*, 141 Vt. 157, 164, 446 A.2d 350, 353 (1982) (discovery rulings are necessarily entrusted to trial court's broad discretion).

■ Here, plaintiff had sixteen months between the filing of the complaint and the summary judgment hearing in which to conduct the necessary depositions. She also had more than eight months from the time her attorneys voluntarily adopted a discovery schedule which required a conclusion to depositions by August 1, 1987. See V.R.C.P. 26(f) (court is authorized to conduct discovery conference in order to establish plan and schedule for discovery, as well as to set limitations on it); see also *In re Estate of Collette*, 122 Vt. 231, 232, 167 A.2d 361, 362 (1961) (pretrial proceedings are a part of trial procedure, and subsequent course of action is controlled by agreements or admissions made at pretrial conference). Regardless, she failed to take what she now deems to be necessary depositions until after the stipulated time had passed. Given these circumstances, and the fact that plaintiff has not identified anything in the deposition transcripts that would have changed the trial court's reasoning, we see no abuse of discretion in the trial court's decision to deny her motion for a continuance.

---

\* V.R.C.P. 56(c) provides in part as follows:

The [party opposing summary judgment] may serve opposing affidavits and a memorandum in opposition .... Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

## II.

The first two theories asserted by plaintiff as a basis for recovery allege that IBM was negligent either in directing or allowing Lamphere to leave its plant, or in failing to exercise control over him (presumably by keeping him on the premises). As these theories are both predicated on the existence of a duty on IBM's part to control its employee in a reasonable manner, we will address them together.

■ ■ In order to recover in a negligence action, a plaintiff must first establish the existence of a legally cognizable duty on the part of the defendant. *Smith v. Day*, 148 Vt. 595, 597, 538 A.2d 157, 158 (1987); *Behn v. Northeast Appraisal Co.*, 145 Vt. 101, 106, 483 A.2d 604, 607 (1984) ("[a]bsent a duty of care, an action for negligence must fail"). Generally, there is no duty to control the conduct of another in order to protect a third person from harm. *Peck v. Counseling Service of Addison County, Inc.*, 146 Vt. 61, 64, 499 A.2d 422, 425 (1985); Restatement (Second) of Torts § 315 (1965). One of the recognized exceptions to this rule arises where the defendant has the power to control another's actions. *Peck*, 146 Vt. at 65, 499 A.2d at 425; Harper & Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 895 (1934); see also Restatement (Second) of Torts § 315(a), (b) (exceptions arise where a "special relation" imposes a duty to control another's actions or to protect a third person).

Plaintiff predicates the existence of a legal duty in this case on IBM's "special relationship" with Lamphere as his employer, contending that IBM was negligent in failing to control an employee it knew or should reasonably have known was intoxicated, thereby constituting a foreseeable risk to third persons should he be allowed to drive.

The primary case relied on by plaintiff in support of her claim is *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983). In that case, an Otis employee with a history of drinking on the job was working an evening shift. At his dinner break and on other occasions during his shift, he went to his car, where he allegedly consumed intoxicating liquor. Testimony indicated that co-workers and the employee's immediate supervisor were aware that he was drunk and unfit to run his particular machine. After the employee returned from his

dinner break, the supervisor suggested that he go home. He accompanied the employee to the parking lot, asked him if he could make it home, and allowed the employee to drive off. Three miles from the plant a fatal accident occurred; the medical examiner testified that the employee had a .268% blood alcohol content, or the equivalent of more than twenty drinks consumed over a two-hour period. *Id.* at 308. In a significant departure from past precedent, the *Otis* court imputed liability to the Otis Engineering Corporation on those facts, concluding that

> when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others.

*Id.* at 311.

As in *Otis*, plaintiff here contends that IBM had a duty regarding its allegedly intoxicated employee. She contends that IBM should have known that Lamphere was drunk and was leaving the plant in such a state. She also contends that because IBM maintained a nurse's station during the week for ill employees, it had a duty to do so on weekends. Last, she argues that because IBM trains its supervisors in how to handle ill or incapacitated employees, it had a duty to prevent Lamphere—who was without doubt incapacitated on the morning in question—from leaving the plant.

The trial court concluded that none of these facts rose to the level of "taking control" of an employee such that a duty to third persons was thereby created. We agree.

Employers have traditionally been liable for their employees' acts only when the employees were acting within the scope of their employment. See 1 S. Speiser, C. Krause & A. Gans, The American Law of Torts § 4:17, at 630–31 (1983); *Ploof v. Putnam*, 81 Vt. 471, 476, 71 A. 188, 189–90 (1908). One exception to this rule is where an off-duty employee's negligent acts occurred on the master's premises or while using his chattels. See Restatement (Second) of Torts § 317. A second exception giving rise to a duty to control off-duty employees is where the employer voluntarily and knowingly assumes a

duty of control. See *id.* at § 319 ("One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."). We note that *Otis* did not rely on § 319, but rather analogized to it. 668 S.W.2d at 311. In an apparent extension of the law dependent on neither of these exceptions, the Texas Supreme Court found that the employer in *Otis* had a duty to third persons because it had taken "affirmative acts" regarding its intoxicated employee. *Id.* at 309. Plaintiff here seems to rely on the same "affirmative acts" rationale in contending that IBM had a duty to control Lamphere's behavior in some manner on the morning in question.

Initially, we note that the "affirmative acts" in the *Otis* case consisted of a supervisor's suggestion that an intoxicated employee cease work on his machine, and the supervisor's actions in walking him to his car and asking whether he was all right. Even without questioning the *Otis* court's characterization of such acts as affirmative, we believe that it would be imprudent to adopt such a rule of employer liability on the facts of this case. As the strongly worded dissent in *Otis* recognized, the duty outlined by the majority in that case creates more problems than it resolves, while "erod[ing] the concept that an individual is responsible for his or her own actions." *Id.* at 317–19 (McGee, J., dissenting); see also Morrison & Woods, *An Examination of the Duty Concept: Has It Evolved in Otis Engineering v. Clark?*, 36 Baylor L. Rev. 375, 419–25 (1984) (discussion of the "significant questions" raised in *Otis* but left unanswered by the majority opinion).

We note that even Texas courts have declined to extend the holding in *Otis* beyond the precise facts of that case. See, e.g., *Moore v. Times Herald Printing Co.*, 762 S.W.2d 933, 934–35 (Tex. App. 1988) (where there is no evidence of employer's knowledge of employee's incapacity and no evidence of any affirmative act by employer to control employee's actions, no liability will be found); *Pinkham v. Apple Computer, Inc.*, 699 S.W.2d 387, 390 (Tex. App. 1985) (even though employee became intoxicated at company-sponsored picnic, no liability where there was no evidence that employer through its supervisory personnel ever took any affirmative action to

control employee). We regard the appellate court's refusal in *Pinkham* to extend the rationale of *Otis* as particularly significant, given the arguably more egregious set of facts in that case, in which the employer itself provided the alcohol which caused its employee's intoxication.

In summary, we cannot agree with plaintiff that IBM's actions with respect to Lamphere met the level of control necessary to create a legally cognizable duty in IBM under either *Otis* or § 319 of the Restatement (Second) of Torts. The facts do not support a conclusion that there was any affirmative action taken by IBM with respect to Lamphere. Neither did IBM voluntarily "take charge" of Lamphere so as to trigger a duty under § 319 of the Restatement. Giving plaintiff the benefit of all reasonable doubts, *Price v. Leland,* 149 Vt. 518, 521, 546 A.2d 793, 796 (1988), we conclude that there was no genuine issue of material fact and that IBM was entitled to judgment as a matter of law. V.R.C.P. 56(c).

## III.

Plaintiff's third theory of negligence with respect to IBM is the doctrine known as "negligent entrustment." Plaintiff alleged in her complaint that IBM was negligent in entrusting the operation of an automobile to Mark Lamphere when it knew or should have known of his intoxicated condition.

The rule of recovery under this theory is stated in § 308 of the Restatement (Second) of Torts:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

One of the essential elements of negligent entrustment, then, is that there actually be an entrustment of an item *under the control* of the one against whom liability is claimed. See comment a to § 308 (words "under the control" indicate that third party is entitled to use the thing only by consent of the actor, and actor reasonably believes that by withholding consent he can prevent third person's use of the thing). For

example, in the case of *Dicranian v. Foster*, 114 Vt. 372, 45 A.2d 650 (1946), liability was found where an intoxicated truck driver allowed his intoxicated assistant to drive the company truck, and an accident ensued. We stated in *Dicranian* that "liability exists aside from any relationship of master and servant between the parties; it arises out of the combined negligence of both, the negligence of one in entrusting the automobile to an incompetent driver and of the other in its operation." *Id.* at 375, 45 A.2d at 652.

■ In order to recover for negligent entrustment on the part of IBM, then, plaintiff must prove (1) that IBM entrusted a vehicle to Lamphere; (2) that IBM knew or should have known that Lamphere presented an unreasonable risk of harm; and (3) that Lamphere negligently caused harm. See *id.* at 376, 45 A.2d at 653. Without reaching the second and third parts of the test, it is clear that IBM never entrusted anything under its control to Mark Lamphere, who left the plant in his own vehicle and of his own volition. Thus, this claim must also fail.

*Affirmed.*