VERMONT SUPERIOR COURT

Orange Unit
5 Court Street
Chelsea VT  05038
802-685-4610
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 24-CV-00731



| Christopher Luce et al v. Matthew Pierson et al |
| --- |

## ENTRY REGARDING MOTION

Title:       Document(s) Filed Objection to Entry Order Regarding Motion (Motion: )
Filer:       Christopher Luce
Filed Date:  October 24, 2024

The motion is DENIED.

Plaintiffs Christopher Luce and Linda Bonnett have filed a motion entitled Objection to Entry Order Regarding Mediation (the "Objection"), which the Court interprets as a motion to reconsider its prior Entry Order denying Plaintiffs' Motion Request for No Mediation in this Case Due to the Plaintiff's Financial Inability to Pay the Fee.

In this Objection, Plaintiffs level the following allegations against the Court.  First that the Court acted in a "punitive and discriminatory manner."  Second, that the "judge made a hasty decision in favor of the defendants . . ."  Third, that the Court "did not acknowledge that Plaintiffs are senior citizens with financial obligations that cannot be changed or ignored."  Fourth, that the Court's ruling "endangers the plaintiffs' safety, and a hasty decision without inquiry has put the plaintiff in financial and subsequent physical danger."  Plaintiffs also allege that the Court's decision was an "unconscionable denial."

The Court has reviewed Plaintiffs' filings, Defendants' replies, the standards of Rule 16.3, as well as the October 14, 2024 hearing, and it finds Plaintiffs' allegations lack foundation and merit.

*Background to the October 22, 2024 Entry Order*

The Court first discussed mediation with the parties at the October 14, 2024 hearing on Defendants' Motion for a Preliminary Injunction.  The Court raised the issue of mediation because it was concerned that the costs of litigation for both sides could easily exceed the value that either side might be entitled to recover in this matter either in terms of monetary damages or injunctive

relief. The Court's comments arose from the fact that early mediation, if engaged by both sides in good faith, offers a promising route forward to resolve this dispute with less cost than on-going litigation—including discovery, depositions retainer of expert witnesses, copying and transcript costs, among other fees and costs.

In directing the parties to early mediation, the Court was not imposing mediation on the parties, but it was simply moving the time for mediation to the start of the case. As a civil matter, the present action is subject to mandatory mediation under V.R.C.P. 16.3. The purpose of moving mediation to the front was to give the parties the best opportunity to settle without incurring litigation costs before mediation costs.

Plaintiffs agreed and consented to early mediation at the October 14th hearing and the Court's proposed 90-day window. At no time during this hearing did Plaintiffs indicate that they had financial limitations or would be unable to perform the mediation if costs went above a certain level or if they were required to pay the fees within 90 days. Plaintiffs made no comment about their income, age, or ability to go forward with mediation. Plaintiff Luce, who claims to have a certification and training in mediation, appeared knowledgeable about mediation and the process of engaging a mediator.

In directing the parties to mediation, the parties discussed a few mediators that in the Court's experience have worked well with parties in similar circumstances, but the Court did not require the parties to pick a specific mediator. If the initial choices for mediator are cost prohibitive to the parties, then there is nothing in the Court's directions then or now that prevent them from finding another, more reasonably priced mediator.

*The October 22, 2024 Entry Order*

Four days after the October 14th hearing, Plaintiffs filed a motion seeking for the Court to release them from the obligation to mediate under V.R.C.P. 16.3(c)(1)(B). For the first time, Plaintiffs alleged (1) that they were senior citizens and (2) had limited financial resources. The Court reviewed their filing, and the Defendants' reply. The Court found that the parties had only engaged one mediator. The Court also received representations that the Plaintiffs had communicated certain pre-mediation conditions to Defendants before they would engage in mediation. Plaintiffs did not indicate through either affidavit or other representation the size of the financial hardship. While the motion does speak to overdue bills, upcoming heating expenses, it does not provide the Court with

any details. The Court in reviewing the filing was not provided specific information as to whether the hardship was the specific mediator's price or the costs of mediation in general.

While Rule 16.3(c)(1)(B) gives the Court the ability to cancel mediation where there are financial hardships, the decision is addressed to the Court's discretion.[1] *Poplaski v. Lamphere*, 152 Vt. 251, 255 (1989) (pre-trial decisions are addressed to the trial court's discretion). In this case, the Court weighed several considerations before issuing its October 22, 2024 decision.

First, there is the fact that Plaintiffs' change of heart occurred only 4 days from their in-Court agreement that mediation offered a good alternative to litigation and an opportunity to resolve this case with less expense than they are likely to incur during litigation.

Second, Plaintiffs' motion does not indicate that they have contacted or sought to contact any other mediator, and it is premised solely on one mediator's costs.

Third, Plaintiffs' motion, while making reference to their financial problems, lacks specificity. While Plaintiffs seek to put the burden on the Court to conduct a further inquiry into these details, nothing in Rule 16.3 puts that responsibility on the Court. As the moving party, Plaintiffs bear the burden to show why they cannot afford mediation, and in the absence of such, the Court is within its discretion to deny the motion.

Fourth, mediation remains an important part of the civil litigation process. Its role in resolving cases in a faster and more cost-efficient manner is undisputed. One study done by the Michigan Court system found that mediation led to the resolution of 72% of the civil cases in three counties within 78 days from the parties being ordered to mediation. *M. Hilliker, Mediation After Case Evaluation*, Michigan State Court Administrative Office (Feb. 2011), available at https://www.courts.michigan.gov/4a670f/siteassets/reports/odr/case-evaluation-study-results.pdf. The New York State Court System notes that mediation and other alternative dispute resolution programs "often saves money and speeds settlement. In mediation, parties play an important role in resolving their own disputes. This often results in creative solutions, longer-lasting outcomes, greater satisfaction, and improved relationships." *NY Courts, What is ADR?*, available at https://ww2.nycourts.gov/ip/adr/What_Is_ADR.shtml#:~:text=Alternative%20dispute%20resolu

---

[1] In researching whether any court has applied this provision, the Court found no rulings of record from either trial courts in Vermont or from the Vermont Supreme Court.

tion%20(ADR)%20refers,New%20York%20State's%2062%20counties (last visited Nov. 3, 2024). These reasons remain valid in the present matter, and the Court found no reason to excuse the parties from using this resource.

Fifth, the Court was and remains concerned that time is of the essence in starting the mediation process. At each stage of this litigation, the case has faced procedural issues that have delayed its progress. The Court's experience is that parties should not delay on mediation if that is the next step.

Sixth, while the Court was and remains sympathetic to Plaintiffs' financial situation, it recognizes that the costs of going forward with litigation are likely to be as great as mediation. By way of further example, Plaintiffs in this case are claiming emotional distress, which may or may not require an expert witness to establish either the duty of care of to explain the causative link between Defendants' actions and Plaintiffs' injuries. They are also claiming that Defendants located their septic system either within or too close to the right-of-way, this claim may also require the expert opinion of a septic engineer. If either of these costs are realized, Plaintiffs are likely to incur expenses in excess of any mediation fees that they have quoted to the Court.

With these factors in mind, the Court issued a brief decision on October 22, 2024 to keep the parties focused on mediation and to provide a definitive answer to Plaintiffs' request. This Order was not directed to the benefit of one party over the other, but it was directed to benefit of both to keep both sides focused on finding a mediator and beginning the mediation process.

Based on the Court's consideration of those factors, there was no abuse of discretion in its decision or a punitive or discriminatory purpose. The Order, while brief, was neither hasty, nor ill-conceived but an exercise of this Court's discretion. *Medical Center Hosp. of Vermont, Inc. v. City of Burlington*, 152 Vt. 611, 627 (1989) (finding no abuse of discretion unless that discretion has been abused or withheld entirely).

*Motion for Reconsideration*

In their motion for reconsideration, Plaintiffs provide no additional evidence or reasons to revisit the Court's decision. Plaintiffs do state that they may not be able to participate in mediation, even with the Court's order, because their finances are so limited. They also speak of a fear and concern that they will be forced into contempt of Court.

The purpose of the mediation process is to provide the parties with a forum to resolve their disputes within a short-timeframe and with an overall lower cost. In this case, the Court continues to view mediation as a strong option for the parties, and it will continue the mediation order under Rule 16.3. The Court will continue the 90-day timeline as there has been no showing that this time is not feasible to contact mediators. However, upon further reflection, the Court will allow two accommodations:[2]

First, the Court will re-start the deadline for mediation with the present date of this Order. The 90-day window is extended to February 4, 2025. This effectively gives the parties nearly an additional month to conduct the mediation.

Second, the parties may have the following accommodation without further order from the Court: if the parties can secure a mediator and if Plaintiffs can secure either a delayed or deferred payment schedule that would, as a result, push the mediation beyond the 90-day deadline, then such mediation may occur outside the 90-day window. In such case, the parties shall notify the Court of the delay and the anticipated date.

**So Ordered.**

Electronically signed on 11/4/2024 3:06 AM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge

---

[2] While not an accommodation, the Court will also note that no contempt can issue until there is a show cause hearing and an opportunity for the parties to be heard on the issues causing non-compliance, including any financial difficulties. The intent of any such hearing is to examine the parties' efforts and good faith used to comply with the Court's Order. Any order resulting from such a hearing is not punitive in nature but would seek a coercive effect in furtherance of the right or interest that has been thwarted by any finding of contempt. *In re C.W.*, 169 Vt. 512, 517–18 (1999).