IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

PATRICIA HERNDON, Next of
Kin of WARREN G. PRICE,
Deceased,

       Plaintiff-Appellant,

Vs.

MICHAEL AND JEANETTE
HUGHES and JEFF McALPIN
d/b/a PYRAMID MOTORS and
McALPIN ENTERPRISES,

       Defendants-Appellees.



**FILED**

**March 4, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

Shelby Circuit No. 77722
C.A. No. 02A01-9706-CV-00128

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE JAMES E. SWEARENGEN, JUDGE

Thomas K. McAlexander of Jackson
For Appellant

Phil Zerilla, Jr., of Memphis
For Appellee, McAlpin

*REVERSED AND REMANDED*

Opinion filed:

                **W. FRANK CRAWFORD,**
                **PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

      This appeal involves an automobile accident and the subsequent wrongful death action

brought by the daughter of the decedent. Plaintiff-appellant, Patricia Herndon, filed suit against

Michael Hughes, the driver of the other automobile, the driver's wife Jeanette Hughes, co-owner

of the vehicle, and Jeff McAlpin & Associates, Inc., (McAlpin), the car dealership that sold Mr. Hughes the automobile. Ms. Herndon appeals the order of the trial court granting summary judgment to McAlpin.

Plaintiff's complaint alleges that defendant, Jeff McAlpin & Associates, Inc. (McAlpin), is in the business of selling used cars, and on April 4, 1995, McAlpin sold a 1986 Cadillac Fleetwood to defendant Michael Hughes. McAlpin financed the purchase and retained title to the vehicle as collateral, but possession was transferred to Hughes. Plaintiff alleges that at the time of the sale Mr. Hughes did not have a valid driver's license, it having been previously revoked, and that he was not a competent and capable driver.

Approximately five days after the sale, defendant Hughes was involved in an accident with Warren Price, the father of the plaintiff. The complaint alleges that Mr. Hughes ran a red light at an excessive rate of speed and collided with Mr. Price's vehicle at the intersection of Semmes Road and Lamar Avenue in Memphis causing Mr. Price's death. The Complaint alleges in part as follows:

> 12. The defendant [Jeff McAlpin & Associates, Inc.] had a duty to the deceased and all members of the public to only release vehicles from his automobile sales business to persons who were licensed and competent drivers. It is the nature of the defendant's business to enter into sales agreements with persons whom the defendant knows or should know are high risk drivers. It is the defendant's practice to retain title to the vehicles released to its customers until the customer pays the sales price of the automobile in full to the defendant. *The defendant knew* or should have known *that the defendant Michael Hughes* was an unlicensed and *incompetent driver.* The defendant would owe a duty to the deceased and all members of the public not to allow unlicensed and incompetent drivers to drive vehicles from his sales lot. (emphasis added).

> 13. The defendant [Jeff McAlpin & Associates, Inc.] breached the duty outlined above owed to the deceased and other members of the public. The breach of that duty amounted to negligence which was a direct and proximate cause of the accident occurring April 9, 1995 giving rise to this cause of action and which resulted in the death of the deceased.

McAlpin's Motion for Summary Judgment states in pertinent part as follows:

> This Defendant would show unto the Court that there is no legal duty, on the part of this Defendant, to ascertain whether or not the driver, MICHAEL HUGHES, to whom he sold a vehicle to several days prior to the accident in question, had a license and that there was no duty to determine if he was a competent and capable driver and, therefore, this Defendant is entitled to judgment as a matter of law.

The trial court granted summary judgment to defendant McAlpin apparently on the basis that no legal duty was owed to the plaintiff.

The only issue before this Court is whether the trial court erred in granting summary judgment to defendant McAlpin. Plaintiff-appellant asserts that McAlpin is liable to the deceased on a theory of negligent entrustment.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 210. When a motion for summary judgment is made, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. [citations omitted]. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id*. at 211. (emphasis in original). Where a genuine dispute exists as to any material fact or as to the conclusions to be drawn from those facts, a court must deny a motion for summary judgment. *Id.* (citing *Dunn*, 833 S.W.2d at 80).

Summary judgment was improperly granted to defendant McAlpin in this case. At the time defendant's motion for summary judgment was granted, the record before the trial court consisted only of the Complaint and an unsworn Answer. If the Complaint states a cause of action, denials in the Answer without supporting affidavits cannot be the basis for summary judgment. We hold that plaintiff's complaint states a cause of action for negligent entrustment and therefore we must reverse the judgment of the trial court and remand the case. However, since the law of negligent entrustment, as applied to automobile sellers, is less than clear, further

3

discussion might be helpful to the trial court on remand.

Appellee cites to the unreported decision by the Eastern Section of this Court in ***Irwin v. Arnett***, C.A. No. 162, 1986 WL 13961 (Tenn. App. Dec. 12, 1986) as support for the trial court's ruling that a cause of action for negligent entrustment cannot be maintained against an automobile seller. ***Irwin*** involved the question of the liability of a car dealer for selling an automobile to an allegedly mentally incompetent driver. The Court held simply that even though Swanner's Used Cars retained a lien on the car and the formal vehicle registration requirements had not been complied with after the transfer, there was a sale of the car to Mr. Arnett and therefore there could be no cause of action for negligent entrustment. *Id.* at \*2. The justification for this holding is unclear and because we can envision situations where a sale to an obviously incompetent buyer would be negligent, we are reluctant to dispense with the instant case so perfunctorily.

To establish a claim for negligent entrustment, a plaintiff must show that there was (1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that is the proximate cause of injury or damage to another. ***Nichols v. Atnip***, 844 S.W.2d 655, 659 (Tenn. App. 1992). Our research reveals that most jurisdictions who have addressed the issue of negligent entrustment of an automobile to an incompetent driver, have held that for liability to attach an entrustor must have had actual knowledge of the driver's incompetence at the time of the entrustment. *See, e.g.,* ***Pugmire Lincoln Mercury, Inc. v. Sorrells***, 236 S.E.2d 113 (Ga. App. 1977); ***Johnson v. Owens***, 639 N.E.2d 1016 (Ind. App. 1994). Other jurisdictions, in addressing the entrustment of a vehicle to an unlicensed driver, have held an entrustor liable in the absence of actual knowledge, but only if the entrustor is under a statutory duty not to release a car to an unlicensed driver. *See, e.g.,* ***Schneider v. Midtown Motor Co.***, 854 P.2d 1322 (Co. App. 1992). Tennessee courts have long held that one who knowingly entrusts his car to an individual incompetent to operate it can be held liable for negligent entrustment. *See* ***V.L. Nicholson Constr. Co. v. Lane***, 177 Tenn. 440, 150 S.W.2d 1069 (1941). Although we could find no Tennessee case that has actually held the seller of an automobile liable for negligent entrustment, it appears that liability could attach under appropriate circumstances.

For example, in the case of ***Hamrick v. Spring City Motor Co.***, 708 S.W.2d 383 (Tenn.

4

1986), the Tennessee Supreme Court addressed a situation where a wrongful death action was brought against an automobile dealer in part on a theory of negligent entrustment. Luther Champion was allowed to take possession of a new pickup truck from the inventory of Spring City Motor Company despite the fact that he had not yet attained a commitment from his credit union to finance the purchase. Prior to completion of the sale, Mr. Champion became intoxicated and was involved in a serious accident in which one man was killed and two others were injured. *Id*. at 385. Plaintiffs brought suit for personal injuries and wrongful death against Spring City Motor Co. asserting theories of (1) permissive use, (2) negligent entrustment, and (3) *respondeat superior*. In granting summary judgment to Spring City on the issue of negligent entrustment, the court held that there was no evidentiary basis for imposing liability on the seller of an automobile when the purchaser "was 29 years of age, duly licensed, steadily employed, and was neither intoxicated nor otherwise impaired when the vehicle was delivered to him." *Id*.

In the instant case, appellant asserts in her brief that "[b]y implication, if the driver in *Hamrick* had not been licensed or employed then the defendant in that case would have been put on notice that there was some question as to the driver's degree of responsibility and that he could be a risk to the general public while behind the wheel of a car." Furthermore, appellant argues that since defendant McAlpin's business involves car sales to "persons whom the defendant knows or should know are high risk drivers," McAlpin should owe "a duty to the deceased and all members of the public not to allow unlicensed and incompetent drivers to drive vehicles from his sales lot."

First of all, we note that the *Hamrick* Court stopped far short of creating a seller's duty to ascertain whether a prospective purchaser is duly licensed. Secondly, we take issue with the relevance of appellant's assertion that Mr. McAlpin deals with "high risk drivers." Appellant apparently equates high credit risk with driving incompetence. It is true that Pyramid Motors is not a "major" car dealership, and it is perhaps also true that McAlpin deals with a disproportionate number of high *credit* risk patrons, however, that fact does not put McAlpin on inquiry into the driving habits or licensure of his customers. Appellant's brief states that defendant Hughes "had no gainful employment and had an extensive criminal record." We fail to see how a person's employment status is an indication of driving prowess. Similarly, we note that Hughes' alleged "extensive criminal background" is not relevant to his ability to operate an

5

automobile at the time of the sale in question. Appellant apparently suggests that car dealers should be required to run criminal background checks on their customers, or at least refuse to sell cars to known criminals. We find this suggestion not only unduly burdensome, but ridiculous. This being the case, appellant's only possible avenue of recovery would be for negligently entrusting a vehicle to a known incompetent driver. The question then becomes whether an automobile dealer has a duty to investigate whether a potential customer is a competent and capable driver before selling him a car. Although we do not feel that lack of a driver's license necessarily equates with driving incompetence, some jurisdictions have created a statutory duty on the part of car dealers to investigate whether a potential customer is properly licensed. Failure to comply is negligence *per se*, or at least evidence of negligence. *See, e.g.*, *Schneider v. Midtown Motor Co.*, 854 P.2d 1322 (Colo. App. 1992). The Tennessee legislature has not seen fit to create a duty on the part of car dealers to refrain from selling vehicles to unlicensed drivers, and we decline to attempt to judicially create such a duty. We think that the language from *Hamrick* quoted above by the appellant, was not intended to create a duty to investigate age, licensure, employment, etc., before selling a car, but was intended merely to imply that it may be negligent to hand over the keys to an obviously intoxicated or otherwise impaired driver. This interpretation is bolstered by language from a previous decision of this Court in *Kennedy v. Crumley*, 51 Tenn. App. 359, 367 S.W.2d 797 (1962) which involved a traditional entrustment situation rather than a sale. In *Kennedy,* this Court quoted with approval from *American Jurisprudence* as follows:

> The common law rule [of negligent entrustment] charges the owner with liability because of his negligence in knowingly and willfully permitting an incompetent driver to operate his car. Such liability on the part of the owner is generally confined to cases where he entrusts his motor vehicle to one whose appearance or conduct is such as to indicate his incompetency or inability to operate the vehicle with due care. To impose liability in other cases, where the incompetency of the entrustee is not apparent to the entrustor of the motor vehicle at the time of the entrustment, it must be affirmatively shown that the entrustor had at that time knowledge of such facts and circumstances relating to the incompetency of the entrustee to operate the motor vehicle as would charge the entrustor with knowledge of such incompetency.

*Kennedy*, 367 S.W.2d at 802-03 (quoting 5A Am. Jur. *Automobiles and Highway Traffic* § 581).

When applying this language to a seller of an automobile, we interpret it to mean that in the

absence of actual knowledge of a potential buyer's incompetence, or a visible manifestation of incompetence such as when a buyer is obviously intoxicated, a seller is under no duty to investigate further before handing over the keys.

In the instant case, the complaint alleges that the accident occurred several days after McAlpin sold the automobile to Hughes, and that Hughes was guilty of various acts of common law negligence and violated various state statutes governing the operation of motor vehicles. Although the complaint alleges that McAlpin knew or should have known that Hughes was not a competent and capable driver at the time he released the vehicle to Hughes, the complaint does not allege that any incompetence which might have been observed by McAlpin on the date the vehicle was purchased was in existence at the time the accident happened several days later. However, the complaint does allege, although in a rather casual manner, that McAlpin knew that Hughes was an incompetent driver and that his negligence in entrusting the vehicle to Hughes was a direct and proximate cause of the accident which occurred several days after the sale. Defendant's motion for summary judgment was unsupported by any affidavit and merely states that there was no legal duty to ascertain whether the driver, Hughes, was a competent and capable driver. We note that neither the motion for summary judgment nor any supporting documents affirmatively negate the allegation that McAlpin knew that he was entrusting the vehicle to an incompetent driver. In other words, while there may not be a duty to ascertain that someone is a competent driver or an incompetent driver, if there is actual knowledge that such is the case, the circumstances are somewhat different.

Viewing the allegations of the complaint in the light most favorable to plaintiff, a cause of action for negligent entrustment is alleged in the Complaint and cannot be overcome by mere denials in the Answer.

The judgment of the trial court is reversed and the case is remanded for further proceedings. The defendant is not precluded from filing a properly supported motion for summary judgment on remand. Costs of the appeal are assessed equally between the parties.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

7

_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**

8