**Richard A. Eastman and Raymond A. Eastman, as father and next friend v. Harlan Williams and Julia McLane**

[ 207 A.2d 146 ]

December Term, 1964

Opinion Filed February 2, 1965

Present: Holden, C. J., Shangraw, Barney, Smith, JJ. and Daley, Supr. J.

*Black and Plante* and *Frank G. Mahady* on the brief for plaintiffs. *Parker, Ainsworth & Richards* for defendants.

**Smith, J.** The infant plaintiff was injured while riding on a merry-go-round in the yard of the Union Street School of Springfield of which school he was a fourth grade pupil at the time of the accident in the Spring of 1963. The defendant, Harlan Williams, was a teacher in the school at this time, and was one of the teachers supervising the pupils at play during the recess period during which the accident occurred. The defendant Julia McLane, was a teacher and the superintendent at the same school at the time. In a jury trial of the tort action in the Windsor County Court, the motion of both defendants for a verdict to be directed in their favor at the close of all the evidence in the case was granted by the lower court. The plaintiff has appealed here from the direction of the verdict for the defendants and the resulting judgment in their favor.

The claim of the plaintiff is that the negligence of the defendant schoolteachers in their duty of care owed to him as a pupil in their charge was the proximate cause of the injury he received and that they are liable therefor.

Involved here is the question of the standard of care owed by teachers in a public school to pupils under their care and supervision. Our statutes are silent upon the standard of care owed by a teacher to a pupil, and the question not having been previously presented to this Court, it is one of first impression here.

It has, however, long been the rule in this State that a teacher could be held liable in damages to a pupil for malfeasance in the infliction of excessive physical punishment. *Lander* v. *Weaver*, 32 Vt. 111. In the Lander case this Court refused to find that a teacher was a public officer "exercising by virtue of his office a discretionary and quasi judicial power" and thus put a teacher in the class of an employee of the municipality by whom he was employed.

In the case of *Ferraro* v. *Earle*, 105 Vt. 243, 164 Atl. 886, where the defendant was a fireman employed by a municipality, the Court considered the liability of public officers and employees for injuries caused by their negligent acts to private persons when the duties imposed are ministerial and not judicial or discretionary.

"It is a general rule that a municipal officer is personally liable to private persons for injuries imposed by his negligence or misfeasance, when the duty imposed upon him is ministerial and not judicial or discretionary" *Ferraro* v. *Earle,* supra, p. 246.

The Court went on to quote with approval from *Florio* v. *Jersey City,* 101 N.J. Law 525, 129 Atl. 470, 472:

"We think that a sound public policy requires that public officers and employees shall be held accountable for their negligent acts in the performance of their official duties, to those who suffer injury by reason of their misconduct. Public office or employment should not be made a shield to protect careless public officials from the consequences of their misfeasances in the performance of their public duties."

■ Viewing a teacher in the role of a public employee, and applying the rule just stated, it necessarily follows that a teacher is personally liable to pupils under his supervision for injuries imposed by his negligent act, or misfeasance. Other jurisdictions are virtually unanimous in holding a teacher liable for misfeasance resulting in injury to a pupil under his charge and care, and we so hold here.

But presented to us in the present case, and which was not presented to the Court in Ferraro concerning the fireman, is the question of whether a teacher is liable to a pupil under his supervision because of nonfeasance, that is, the omission of an act which ought to have been done by such teacher, and which failure to act resulted in injury to the pupil.

In our consideration of this question we are aware that other jurisdictions have varied in their answers to the question of whether a teacher is liable for injuries received by a pupil in his charge as a result of the nonfeasance of the teacher. The Massachusetts court has reasoned that because a teacher has only ministerial duties to perform, such teacher can be held liable only for injuries to a pupil resulting from the teacher's misfeasance. *Fulgoni* v. *Johnston,* 302 Mass. 421, 423 19 N.E.2d 542, 543.

The Maine decisions, however, are to the contrary, holding that a teacher having the care and custody of pupils must act so as not negligently to injure them, whether it be misfeasance or nonfeasance that causes such injury. *Brooks* v. *Jacobs,* 139 Me. 371, 31 A.2d 414, 417. The reasoning of the Maine Court is based both upon the teacher-pupil relationship "in loco parentis" and the common law obligation that every person must so act or use that which he controls as not to injure another.

448

■ Granting that a teacher is a public employee, we think that his relationship to the pupils under his care and custody differs from that generally existing between a public employee and a member of the general public. In a limited sense the teacher stands in the parent's place in his relationship to a pupil under his care and charge, and has such a portion of the powers of the parent over the pupil as is necessary to carry out his employment. In such relationship, he owes his pupils the duty of supervision, and if a failure to use due care in such supervision results in injury to the pupil in his charge, makes him liable to such pupil. Common sense and fairness must call for the exercise of reasonable care in such duty of supervision, not only in the commission of acts that will not injure the pupil, but in a neglect or failure to act, when from such failure to act, injury results. See *Doktor* v. *Greenberg*, 58 N. J. Super 155, 156 A.2d 793, 795; *Guyten* v. *Rhodes*, 65 Ohio App. 163, 29 N.E. 2d 444, 445; 78 C.J.S. Schools and School Districts, §238, at 1157; 47 Am. Jur. Schools (1959 Supp.), §60.1, p. 30. If the teacher is liable for misfeasance we find no sound reason why he should not also be held liable for nonfeasance, if his acts or neglect are the direct proximate cause of the injury to the pupil.

■ The motion of the defendants below for a verdict directed in their favor advanced seven grounds for the court's consideration. We think that such grounds can be condensed into (1) failure of the plaintiff to show a breach of duty on the part of the defendants; (2) failure of the plaintiff to show a causal connection between plaintiff's injury and the alleged breach of duty; and (3) contributory negligence on the part of the plaintiff which would bar his recovery. The ground was also advanced that the defendants should receive the protection extended under the theory of governmental immunity, but the court in granting the motion explicitly stated that it did not consider such ground of the motion, although no statement was made upon which other ground or grounds of the motion the court directed the verdict in favor of the defendants. Because the record fails to disclose the grounds upon which the defendants' motion for a directed verdict was granted by the court below, we may pass upon each aspect of the motion. *Rivard* v. *Roy*, 124 Vt. 32, 34, 196 A.2d 497.

■ The breach of duty on the part of the defendants which is here alleged by the plaintiff is one of supervision. An examination

of the evidence in the record before us pertinent to such duties on the part of the defendants, their alleged breach thereof, and the causal connection of such breach, if any, to the injuries suffered by the plaintiff, is now necessary. In examining such evidence we must view it in the light most favorable to the plaintiff. *Batchelder* v. *Birchard Motors, Inc.,* 120 Vt. 429, 430, 144 A.2d 298; *Comstock* v. *Shannon,* 116 Vt. 245, 73 A.2d 111.

The merry-go-round upon which the plaintiff received his injury was a circular wooden platform, poised upon a cement base and supported by steel cross braces, with the platform raised about six inches from the ground. The propulsion of the merry-go-round was furnished by the children pushing against posts along its side, and then jumping on the platform to enjoy the resulting ride.

Various rules for the use of the merry-go-round had been established by Miss McLane, the school principal, and such rules were known by the plaintiff. One of such rules was that a child should not ride on such merry-go-round except in a standing position, and sitting or kneeling on the platform was prohibited.

The merry-go-round in question had a missing three-inch piece of board on one part of its circular edge, and there was a small hole through the floor near the center of the apparatus. This condition was known to both defendants, and had been reported by Miss McLane to the maintenance department of the Springfield schools, but had not been remedied at the time when the injury to the plaintiff occurred, nor had the children been forbidden to use the merry-go-round. During the recess period in which the plaintiff received his injury, the pupils at play were being supervised by three teachers, one of whom was the defendant Williams, who was watching that part of the school playground upon which the merry-go-round was situated.

The crux of the plaintiff's case is that he was injured by reason of stepping through the hole in the center of the merry-go-round. Such hole, says the plaintiff, constituted a dangerous condition that was known, or ought to have been known, to the defendant teachers, and defendants' failure to warn the plaintiff of such dangerous condition, or their failure to prohibit the use of the merry-go-round with such an existing danger to the pupils of the school, was the proximate cause of the injuries he received.

We are immediately confronted with contradictory evidence from plaintiff and defendant on the actual happening of the accident. The

defendant Williams, who admittedly was the first adult to reach the injured plaintiff, and who carried him into the school for examination and treatment, is clear and emphatic in his testimony that the plaintiff was injured by reason of his sitting or kneeling on the side of the merry-go-round and dragging his leg over the side in such a manner that it caught under the outside edge of the revolving platform. Williams' evidence was that he saw the plaintiff before the injury occurred riding on the merry-go-round in the prohibited manner just described, and that he·started for him to correct such conduct, but that the injury occurred before he could reach the boy. His testimony also was that he had to extricate the boy's leg from under the merry-go-round rim before he could take him to the school.

The infant plaintiff, whose age was nine at the time of the accident, to the contrary, answered "yes" when asked if his foot "went through a board," as well as giving the same response when later asked, "And your foot went right through this hole." His younger sister, approximately eight years old at the time of the accident, testified she saw her brother jump on the merry-go-round and "saw him go down." The plaintiff's mother testified that she viewed the hole in the merry-go-round after the accident, that the hole in her personal opinion was big enough to admit the plaintiff's foot, and that there was blood on the hole.

While the testimony of the defendant Williams might be said to have had more weight upon the actual cause of the injury to the plaintiff, the testimony of the infant plaintiff and his younger sister, plus that of the mother was substantial in nature tending to support the plaintiff's claim, and the question was one for the jury. *Austin* v. 201, 138 A.2d 312.
*Bundy,* 122 Vt. 111, 112, 165 A.2d 236; *Benoit* v. *Marvin,* 120 Vt.

The plaintiff, to hold the defendants, or either of them, liable for actionable negligence, had the duty of showing that the presence of the hole in the platform was such that a prudent person in like circumstances as were the defendant teachers, would have thought that injury would be likely to result from an omission to warn of such hole, or to prohibit the use of the merry-go-round. *Winter* v. *Unaitis,* 124 Vt. 249, 253, 204 A.2d 115.

Again, we are confronted with a conflict of evidence. The defendants and their witnesses contended that while the hole was a defect in the merry-go-round, it was not of such size that a prudent person

could reasonably expect that it would admit a child's foot, and hence, was a condition that was not dangerous.

As we have just seen, however, plaintiff's mother testified that such hole did present an apparent danger in that it was of a size large enough to admit the foot of a child, and, of course, the infant plaintiff testified that his foot actually went through it. Such evidence on the part of the plaintiff was substantial and made it a question of fact for the jury to determine if the presence of this hole should have caused a prudent person to foresee harm in the use of the merry-go-round by the pupils.

The evidence given below, taken in the light most favorable to the plaintiff, was capable of conflicting inferences, both as to the actual cause of injury to the plaintiff, as well as to the presence of actionable negligence on the part of the defendants which resulted in such injury to the plaintiff. These were questions for the determination of the jury under proper instructions. *Wright* v. *Shedd,* 122 Vt. 475, 477, 177 A.2d 240. The direction of a verdict for the defendants by the court below was in error.

*Judgment reversed and cause remanded.*