933 A.2d 200 (2007)
2007 VT 62
Janice EDSON,
v.
BARRE SUPERVISORY UNION # 61 and Barre City.
No. 2006-166.
Supreme Court of Vermont.
July 20, 2007.
*202 Philip H. White and Kathleen B. O'Neill of Wilson & White, P.C., Montpelier, and John L. Franco, Burlington, for Plaintiff-Appellant.
Thomas Hayes and Bonnie B. Shappy of Hayes & Windish, Woodstock, for Defendant-Appellee.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
¶ 1. JOHNSON, J.
In this wrongful death action, plaintiff Janice Edson alleges that administrators and teachers of Spaulding High School (collectively, "Spaulding") breached their duty of care and supervision to her daughter, DeAndra Florucci, when DeAndra left the school without authorization and was subsequently murdered. The trial court granted summary judgment to Spaulding, finding that Spaulding did not owe a duty of supervision to DeAndra under the circumstances and that any action or inaction by Spaulding was not the proximate cause of DeAndra's death. We affirm.
¶ 2. DeAndra Florucci began her second year at Spaulding High School in the fall of 2000. She was fifteen years old and had a history of truancy and drug abuse. On the morning of October 25, she arrived at school with a note from her mother excusing her from class for an 11:30 a.m. doctor's appointment. Her friend, a student from another school, was "shadowing" her at school that day.
¶ 3. While DeAndra and her friend were at the doctor's appointment, Donald Baumgardner, a nonstudent, entered the high school looking for DeAndra. At the main office, he asked to see her and was told that he could leave a note for her. After filling out a student-message form, Baumgardner exited the building. Shortly thereafter, an assistant principal noticed Baumgardner entering through the vocational-center entrance at the rear of the school. The assistant principal asked why he was still at the school, and Baumgardner answered that he was waiting to see if his note was delivered to DeAndra. The assistant principal told Baumgardner that he had to leave and escorted him toward the main exit. While the assistant principal was walking Baumgardner toward the exit, the bell rang, indicating a class change, and the halls filled with students. The influx of students diverted the assistant principal's attention, leaving Baumgardner unaccompanied.
¶ 4. As Baumgardner was approaching the main exit, DeAndra and her friend returned to school from the doctor's appointment. The three ran into one another in the school lobby and began to talk. The assistant principal approached the group and asked DeAndra if the conversation was friendly; she replied that it was. The assistant principal then instructed DeAndra and her friend to return to class and directed Baumgardner to leave the school. Upon realizing that DeAndra had returned from an early dismissal, the assistant principal also instructed her to check in with the guidance office. DeAndra responded that she needed something from her locker and walked in that direction. Unbeknownst to the assistant principal, DeAndra failed to check in with the guidance office, and instead left school *203 with her friend and Baumgardner through the rear exit.
¶ 5. As they walked away from the school, Baumgardner told DeAndra that an acquaintance of theirs, Dana Martin, wanted to speak with her at his house. She agreed to accompany Baumgardner there, and left her friend to wait on some steps as they headed toward Martin's home. DeAndra did not return, however, and the police were eventually notified. DeAndra's body was subsequently found under a bridge in Plainfield. Martin confessed to sexually assaulting and murdering DeAndra, acknowledging that he had conceived the crime sometime late the night before or early the same morning.
¶ 6. Plaintiff filed a wrongful death suit against Spaulding in June 2003. She alleged that Spaulding was negligent in its supervision of DeAndra, and that its omissions led directly to DeAndra's sexual assault and murder. In November 2004, Spaulding moved for summary judgment claiming that plaintiff failed to assert any material facts establishing a duty on the part of the school and that even assuming a duty and breach thereof, there was no proximate causation between Spaulding's actions and DeAndra's death,* The trial court granted the motion in January 2006, finding that: (1) Spaulding "owed no duty to protect against an unforeseeable risk," and (2) its "actions were not the proximate cause of DeAndra's death."
¶ 7. Plaintiff appeals, claiming that a reasonable jury could find Spaulding liable for DeAndra's death. Specifically, she alleges that Spaulding: (1) had a duty to exercise reasonable care
* Barre City was also named as a defendant in the complaint; however, the City is not a party to this appeal. The motion for summary judgment decided by the trial court, and at issue here, was filed by Barre Supervisory Union # 61 on behalf of Spaulding only. to prevent DeAndra from leaving the school campus and to implement its visitor policy with regard to Baumgardner, (2) breached the duty of care it owed DeAndra, and (3) should have foreseen that harm would befall DeAndra under these circumstances.
¶ 8. We review a summary judgment decision de novo. Mellin v. Flood Brook Union Sch. Dist., 173 Vt. 202, 211, 790 A.2d 408, 417 (2001). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Peerless Ins. Co. v. Frederick, 2004 VT 126, ¶ 10, 177 Vt. 441, 869 A.2d 112. Furthermore, when a party fails, after adequate discovery, to make a showing sufficient to establish an element essential to her case and on which she has the burden of proof, summary judgment is required. Poplaski v. Lamphere, 152 Vt. 251, 254-55, 565 A.2d 1326, 1329 (1989).
¶ 9. In reviewing the trial court's summary judgment decision, the issue is whether a school, or its officials, may be held liable for negligent supervision when a student impermissibly leaves school grounds and is subsequently the victim of a premeditated crime. School officials may be held liable only to the extent that they owe their students a duty of care, and whether a duty exists upon which liability may be claimed is a matter of law to be decided by the Court. See Sorge v. State, 171 Vt. 171, 174, 762 A.2d 816 A.2d 816, 818 (2000); Restatement (Second) of Torts § 328B(b)(1965). In Vermont, the standard of care that schools and their officials must exercise in supervising students is governed by statute. The duty-of-care statute provides that:
(a) Each school district and its employees owe its students a duty of ordinary care to prevent the students from being exposed to unreasonable risk, from which it is foreseeable that injury is likely to occur.

*204 (b) School districts and their employees do not owe their students a duty of immediate supervision at all times and under all circumstances.
16 V.S.A. § 834. To date, we have not had opportunity to construe the limits of this statutory duty, and thus we look to the common law, to the extent that it is consistent with the statutory language, to determine the scope of the legal duty at issue here. See State v. Marcy, 165 Vt. 89, 104-05, 680 A.2d 76, 85 (1996) (this Court presumes that Legislature intended to codify common law unless statutory language clearly and unambiguously indicates otherwise).
¶ 10. Section 834(a) defines the duty owed by a school to its students, in part, as one of "ordinary care." Under our common law, "ordinary care" requires individuals to act as the reasonably prudent person would under the circumstances. LaFaso v. LaFaso, 126 Vt. 90, 93-94, 223 A.2d 814, 817-18 (1966). Furthermore, the statute limits schools' duty of supervision in scope, to protect students only from "unreasonable risk, from which it is foreseeable that injury is likely to occur." 16 V.S.A. § 834(a) (emphasis added). This is consistent with our common law, under which the degree of care that a reasonably prudent person would exercise, and thus the scope of the legal duty of ordinary care, is determined by the foreseeability of the consequences of an individual's acts or omissions. LaFaso, 126 Vt. at 94, 223 A.2d at 818. Thus, neither our common law, nor the duty-of-care statute, holds individuals liable in negligence for consequences that a reasonably prudent person could not have foreseen or anticipated under the circumstances.
¶ 11. In the specific context of schools, the common law provides additional guidance in defining the scope of the statutory duty of supervision. To a limited extent, school officials stand in loco parentis to pupils under their charge, and as such, may exercise the "portion of the powers of the parent" over students that is necessary to carry out their primary function as educators. Eastman v. Williams. 124 Vt. 445, 448, 207 A.2d 146, 148 (1965). As § 834(b) makes clear, however, school districts and their employees do not owe an absolute duty of supervision to students. Thus, the duty of supervision is limited both by statute and by the common law, which requires schools to protect students only from foreseeable risks, and only to the extent necessary to carry out their educational purpose. Nonetheless, where school administrators or teachers fail to exercise ordinary care in supervising students, they may be held liable to the extent their acts or omissions are the proximate cause of a student's injury. Eastman, 124 Vt. at 448, 207 A.2d at 148.
¶ 12. To overcome summary judgment, plaintiff here must make a showing sufficient to establish that Spaulding owed a legal duty to prevent DeAndra from voluntarily leaving school grounds and ultimately falling victim to Martin's premeditated crime. See Poplaski, 152 Vt. at 254-55, 565 A.2d at 1329. Plaintiff contends that Spaulding's duty under 16 V.S.A. § 834 included the duty to implement attendance and visitor policies that would ensure DeAndra remained on school grounds, thereby protecting her from Martin. While plaintiff concedes that foreseeability of harm gives rise to the duty of supervision articulated both in our common law and statutes, she asserts that this "concept of foreseeability refers to generalized risks of the type of incidents and injuries that occurred rather than predictability of the actual sequence of events." Fazzolari v. Portland Sch. Dist., 303 Or. 1, 734 P.2d 1326, 1338 (1987). As such, she asks us to construe the duty imposed on schools by *205 § 834 as one of protection against any risk from which it is foreseeable that some type of harm might occur.
¶ 13. Unlike the trial court, we leave open the possibility that there exist circumstances under which a school might be held liable for negligent supervision even where a student leaves school grounds voluntarily and without permission, as DeAndra did here. We cannot, however, agree with plaintiff that the foreseeability of any potential risk of harm to DeAndra if she left campus unauthorized was enough to trigger a legal duty on the part of Spaulding to protect her under these circumstances. DeAndra's death was a result of the premeditated criminal act of a third party. In general, crimes committed by a third party fall within the realm of the unforeseeable, and therefore cannot form the basis for liability. See, e.g., Estate of Sumner v. Dep't of Soc. & Rehab. Servs., 162 Vt. 628, 629, 649 A.2d 1034, 1036 (1994) (mem.); Smith v. Day, 148 Vt. 595, 598, 538 A.2d 157, 159 (1987) (finding university was not liable for student's unforeseeable criminal acts). Although we have held that a defendant may be responsible for protecting against the criminal act of another, we have done so only where the defendant had special knowledge or notice upon which to impose a duty to anticipate the wrongful act. Thus, where the former Department of Social and Rehabilitation Services (SRS) failed to protect two sisters from their stepfather  despite several reports of sexual abuse by the girls, school officials, and a babysitter, as well as an admission by the stepfather  we determined that SRS had a duty to anticipate the continued sexual abuse of the girls and could therefore be held liable for injuries suffered as a result of the stepfather's actions. Sabia v. State, 164 Vt. 293, 305-06, 669 A.2d 1187, 1195-96 (1995) (reasoning that SRS had a "special relationship" with the girls, by virtue of its statutory duty to protect abused children, that required it to prevent wrongful acts of a third party). On the contrary, where a child under the supervision of SRS sexually assaulted and killed a cousin with whom he lived, we stated that SRS had no duty to anticipate the criminal act, as there were "no allegations that [the child] threatened the decedent, or even that he had ever been accused of or adjudicated for any delinquent or criminal behavior." Estate of Sumner, 162 Vt. at 629, 649 A.2d at 1036.
¶ 14. Despite plaintiffs assertion to the contrary, Spaulding did not have the requisite knowledge or notice of DeAndra's premeditated murder to bring it within the realm of the foreseeable. See Whitfield v. Bd. of Ed., 14 A.D.3d 552, 789 N.Y.S.2d 188, 189 (2005) (holding that plaintiff must demonstrate that school officials "had sufficiently specific knowledge or notice of the dangerous conduct which caused injury" to establish claim against school). Unlike Fazzolari. where school officials' awareness of a generalized risk of sexual assault in the vicinity of the school was enough to fulfill the foreseeability requirement for liability, the record here is devoid of evidence upon which to impute knowledge to Spaulding. Cf. Fazzolari, 734 P.2d at 1338 (determining that reasonable factfinder could find sexual assault on school grounds to have been a foreseeable risk where a woman was reportedly sexually assaulted on the grounds fifteen days earlier and there were allegations of other attacks as well). There is no allegation that Spaulding was or should have been aware of such criminal conduct perpetrated near its campus, let alone that it knew of Martin, DeAndra's murderer, his association with Baumgardner, or his propensity to commit such heinous acts. See Chavez v. Tolleson Elementary Sch. Dist., 122 Ariz. 472, 595 P.2d 1017, 1023 (Ct.App.1979) (finding no *206 duty to protect against murder of student who wandered off school grounds unauthorized where there were "no facts in the record indicating that school personnel should have been aware of the potential of criminal conduct in the area"). Absent more specific notice of the impending crime, Spaulding had no legal duty to, and in all practicality could not, prevent her death.
¶ 15. Nor did Spaulding owe an elevated duty of care to DeAndra by virtue of her age, immaturity, or previous indiscretions, as plaintiff suggests. Although school officials are required to take into consideration a student's age, situation, and disposition in exercising reasonable care, these factors do not raise the duty owed under § 834 beyond one of ordinary care. See Bridge v. Woodstock Union High Sch. Dist., 127 Vt. 598, 599, 255 A.2d 683, 684 (1969). Rather, school officials must simply act as the reasonably prudent person would in supervising students of similar age and maturity. See 16 V.S.A. § 834(a) (mandating that school districts exercise ordinary care in protecting students from unreasonable risk). "In dealing with children, [the duty of ordinary care must] include consideration of their inability to protect themselves, and their childish indiscretions, instincts and impulses," to the extent that these considerations affect the scope of foreseeable risks to the children. Baisley v. Missisquoi Cemetery Ass'n, 167 Vt. 473, 480, 708 A.2d 924, 928 (1998) (quotation and modification omitted). Thus, a school district might be held liable where a six-year-old child leaves school unattended, darts into the road and is severely injured, precisely because the reasonably prudent person would foresee that a child of such tender years lacks the discretion to stop and look both ways before crossing the road. Here, on the other hand, Spaulding was no more or less likely to anticipate, much less prevent, DeAndra's brutal assault and murder because she was a fifteen-year-old with a history of truancy and drug abuse. Cf. Estate of Sumner, 162 Vt. at 629, 649 A.2d at 1036 (holding that child's history of drinking, getting into fights, and engaging in sexual relations was insufficient as a matter of law to show SRS should have foreseen he was capable of raping and murdering decedent).
¶ 16. Furthermore, Spaulding's duty of supervision is limited in scope to the extent necessary to carry out its educational mandate as a public school. See Eastman. 124 Vt. at 448, 207 A.2d at 148. Elevating the duty of care to ensure that students with known truancy, drug abuse, or other behavioral problems remain on campus would not only be financially and logistically burdensome, but would likely detract from schools' primary purpose by diverting significant resources from education to security. Cf. Palella v. Ulmer, 136 Misc.2d 34, 518 N.Y.S.2d 91, 93 (Sup.Ct. 1987) (stating that it would be intolerably burdensome to require schools to ensure that students remain on campus). Under the circumstances of this case, nothing short of continuous, immediate supervision would have prevented DeAndra from voluntarily leaving school and going to Martin's home. By enacting 16 V.S.A. § 834, the Legislature made clear that the standard of care owed to students is one of only "ordinary care" and that Vermont schools are neither equipped nor expected to provide such constant supervision to students, even those with a troubled history.
¶ 17. On the record before us, we can discern no basis upon which plaintiff may proceed with her claim against Spaulding. Regardless of the adequacy of Spaulding's attendance and visitor policies, the duty of supervision owed by schools to their students *207 under Vermont law is not so broad as to require a school to protect its teenage students from unforeseeable harms such as occurred here. As a matter of law, plaintiff has failed to assert material facts establishing the existence of a legal duty under these circumstances, and we therefore uphold the trial court's grant of summary judgment in favor of Spaulding. See Poplaski, 152 Vt. at 254-55, 565 A.2d at 1329.
Affirmed.
¶ 18. REIBER, C.J., concurring.
I join the Court's holding that plaintiff has failed to establish a legal duty on the part of the school to prevent the tragic harms that befell DeAndra Florucci on October 25, 2000. I write separately, however, to emphasize that our holding rests purely on the lack of foreseeability of those harms, and that this opinion in no way endorses Spaulding's actions with respect to Baumgardner. That school officials took steps to facilitate contact between Baumgardner, a stranger to the school, and DeAndra, a young and troubled student, without inquiring into his identity, relationship to DeAndra, or purpose in making contact, seems a questionable practice at best. As a general matter. I have no doubt that the safety of students like DeAndra would be enhanced by a more probing visitor policy than the one carried out here. I also do not doubt that, under different facts, similar laxity in an attendance or visitor policy might form the basis for school liability.