Baptie v. Bruno, No. 235-4-09 Rdcv (Teachout, J., Aug. 3, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

### STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Docket No. 235-4-09 Rdcv** |

**THOMAS BAPTIE and MARY BAPTIE,**
**INDIVIDUALLY and as**
**ADMINISTRATORS OF THE ESTATE OF JOHN BAPTIE,**
    **Plaintiffs**

**v.**

**JONATHAN BRUNO and ARON MCNEIL,**
    **Defendants**

### DECISION
### Defendant McNeil's Motion for Summary Judgment, filed November 1, 2011

This case stems from Defendant Jonathan Bruno's fatal stabbing of John Baptie, son of Plaintiffs Thomas Baptie and Mary Baptie, on November 1, 2007. Defendant Aron McNeil, then a Castleton Police Officer, responded to Thomas Baptie's 911 call concerning threatening phone calls made to the Bapties by Mr. Bruno on October 28, 2007, four days before the fatal stabbing. Plaintiffs assert that Officer McNeil was negligent in conducting his investigation into these threatening phone calls and thus allowed the fatal stabbing to occur.

Aron McNeil filed a Motion for Summary Judgment on November 1, 2011. A hearing on the motion was held on May 2, 2011. Aron McNeil is represented by James F. Carroll, Esq. Plaintiffs are represented by Thomas W. Costello, Esq.

Defendant McNeil seeks summary judgment on all counts against him: Count III (Negligence), Count IV (Intentional Infliction of Emotional Distress), Count V (Breach of Ministerial Duty), Count VI (Bad Faith), and Count VII (Punitive Damages).

#### Facts

As the Plaintiffs are the nonmoving party, these facts are presented in the light most favorable to them. This case concerns the actions of Officer McNeil after Thomas Baptie called the Castleton Police Department to report a series of threatening phone calls from Jonathan Bruno. Though there is some confusion as to the precise series of calls, Mr. Bruno called the Baptie home several times on the evening of October 28, 2007. Mr. Bruno wished to speak with John Baptie regarding some money he believed John owed

him. John was sick that night and did not come to the phone. Mr. Bruno proceeded to call again and Thomas Baptie answered the phone. During this call, Mr. Bruno made threats against the Baptie family, including stating that he was going to come to their home and shoot them and stating that he was on a cell phone and could be outside the Baptie house. After Thomas Baptie hung up, Mr. Bruno called back and left a voicemail message containing further angry invective.

At this point, Thomas Baptie called 911. During his 911 call, Thomas Baptie indicated that a Jon Bruno, who was approximately 23 years old, was making the threatening phone calls. Officer McNeil responded to the 911 call and went to the Baptie home. Officer McNeil made an initial attempt to search the police records database for a Jon Bruno but failed to find the existent record of Mr. Bruno's criminal history, allegedly because of confusion over the spelling of Mr. Bruno's name.

Officer McNeil and Thomas Baptie had had previous personal and professional encounters. Because of these past negative experiences, when Officer McNeil arrived at the Baptie residence, Mr. Baptie was not happy that Officer McNeil was the one responding to his 911 call, but he was informed that working through the Castleton Police Department was his only option for a potential crime committed in Castleton. In the course of their conversation, Thomas Baptie informed Officer McNeil of the threats, played the voicemail message for him, and told him that the calls were made by a Jon Bruno who had just been released from prison. John Baptie also joined the conversation and informed Officer McNeil that the calls concerned a debt of $40 that he owed Mr. Bruno and that he had known Mr. Bruno almost his whole life.

After this discussion, Officer McNeil informed the Bapties that he would handle the situation by calling Mr. Bruno and telling him to stop and that if Mr. Bruno called again at that point he would pursue a charge of harassment by telephone. Officer McNeil also informed the Bapties that they would not have a very strong case if they attempted to pursue a charge without Mr. Bruno calling again.

While Officer McNeil was at the Baptie residence, Mr. Bruno called again. Officer McNeil, with Thomas Baptie's approval, answered the phone. Officer McNeil told Mr. Bruno to stop calling or else he could face criminal charges and attempted to gather Mr. Bruno's personal information, but Mr. Bruno was nonresponsive. Officer McNeil then left the Baptie residence.

Officer McNeil was called back to the Baptie residence in the early morning of October 29, 2007, because Thomas Baptie reported that Mr. Bruno had called again and left a voicemail message on Mary Baptie's cell phone. Thomas Baptie played this message for Officer McNeil. Officer McNeil informed Thomas Baptie that he had so far been unable to locate Jon Bruno. Officer McNeil also stated that he had called Mr. Bruno back but that Mr. Bruno had refused to give his whereabouts. Officer McNeil concluded the conversation by stating that he would make further inquiries as to Jon Bruno's identity and whereabouts and left on terms indicating that he would be in touch with Thomas Baptie.

The following afternoon Officer McNeil received information about Jon Bruno from his criminal records request including an indication that Mr. Bruno's address was in White River Junction, VT and that Mr. Bruno had a criminal history in both Vermont and Texas. At this point, Officer McNeil believed that he had probable cause to pursue a harassment by telephone charge against Jon Bruno.

Officer McNeil decided to serve Mr. Bruno with a citation. Incorrectly believing Mr. Bruno's last known address to be in the City of Rutland, he contacted the Rutland Police Department for assistance in serving the citation. The Rutland Police Department attempted to serve the citation at the address that Officer McNeil had indicated but were unsuccessful. Although the Rutland Police Department informed Officer McNeil they were unsuccessful in serving the citation, he did not pursue the investigation further before John Baptie was killed.

On November 1, 2007, John Baptie and Jon Bruno encountered each other in a parking lot in Rutland. The men began yelling at one another with Mr. Bruno accusing John Baptie of calling the cops on him and John Baptie accusing Mr. Bruno of making threatening phone calls to his home. Mr. Bruno then invited John Baptie to come back behind Walmart and he walked away behind the nearby Walmart. John Baptie followed Mr. Bruno behind the Walmart. At that point, Mr. Bruno fatally stabbed John Baptie.

**Analysis**

Each of the five counts against Officer McNeil in the Amended Complaint is addressed below.

Count III: Negligence.

In order to prove a claim of negligence, Plaintiffs must showed that Officer McNeil owed them a duty, that he breached that duty, that the breach was a proximate cause of harm, and that Plaintiffs suffered actual damages. *Kane v. Lamothe,* 2007 VT 91, ¶ 7, 182 Vt. 241. The parties have presented differing legal positions on whether Officer McNeil owed Plaintiffs a duty, and if so, whether such a duty derives from statute or common law. Moreover, Defendant McNeil asserts the defense of qualified immunity as a police officer. First the elements of a negligence claim are addressed, followed by an analysis of the qualified immunity defense.

The most fundamental defect with Plaintiffs' negligence claim is the lack of a prima facie case on the element of causation, specifically whether Plaintiffs' evidence is sufficient to go to the jury on the required causal connection between Defendant McNeil's conduct and the harm suffered by the Plaintiffs. Although proximate cause is generally an issue for the jury, the Court may decide it as matter of law where the evidence is so clear that reasonable minds could not disagree. *Collins v. Thomas*, 2007 VT 92, ¶ 8, 182 Vt. 250. Plaintiffs have the burden of showing facts that meet two requirements on the issue of causation: first, that "but for" a defendant's conduct, the

3

harm would not have occurred, and second, that there is a sufficient causal connection to meet the requirement that the defendant's conduct was a "proximate cause" of the harm suffered by Plaintiffs. On the facts of this case, Plaintiffs can show neither "but for" causation nor "proximate causation."

"*But for" causation*

The first requirement for a prima facie case of causation requires Plaintiffs to show "but for" causation. *Wilkins v. Lamoille County Mental Health Services, Inc.,* 2005 VT 121, ¶ 13, 179 Vt. 107. Under this standard, Plaintiffs must show that the harm would not have occurred "but for" the defendant's tortious conduct. Here, Plaintiffs would have to show that but for Officer McNeil's negligence in responding to their 911 call, Jonathan Bruno would not have stabbed John Baptie. This they cannot do.

John Baptie's death came about from an unfortunate chance encounter in a Rutland parking lot four days after Officer McNeil first responded to the Bapties' 911 call. During this tragic encounter, John Baptie chose not to walk away from the situation but rather to follow Mr. Bruno behind the Walmart and engage in what became a fatal altercation. This encounter could have occurred exactly the same way even if Officer McNeil had never became involved, considering the vitriol that Mr. Bruno expressed during the phone calls and John Baptie's acknowledgment that he owed Mr. Bruno money and that Mr. Bruno, who was a violent person, was angry about it. Plaintiffs can not show that "but for" negligence on the part of Officer McNeil, John Baptie would not have encountered Mr. Bruno at some time with the same outcome.

*Proximate causation*

Furthermore, Plaintiffs' evidence does not satisfy the second prong of the causation element. This prong is often referred to as "proximate cause" and requires "a causal connection between the act for which the defendant is claimed to be responsible and which is alleged to be negligent and the resulting flow of injurious consequences." *Rivers v. State*, 133 Vt. 11, 14 (1974). Proximate cause is designed to limit defendants' liability to injuries that are sufficiently closely connected to the act of negligence to constitute legal causation. See *Collins v. Thomas*, 2007 VT 92, ¶ 8, 182 Vt. 250. In order to satisfy the proximate causation test, the causal chain of events must be unbroken by any intervening cause. See *Sumner v. Dept. of Soc. & Rehab. Servs.*, 162 Vt. 628, 629 (1994).

Plaintiffs allege that Officer McNeil negligently conducted his investigation of the offense of harassment by telephone, and that his negligent conduct led to the fatal stabbing. The causal link between the manner in which Officer McNeil conducted his investigation and the fatal stabbing is weak at best. There is no evidence that even if Officer McNeil had conducted a more aggressive investigation that he would have been able to prevent the type of encounter between Jonathan Bruno and John Baptie that took place in a Rutland parking lot.

Furthermore, Plaintiffs' evidence on causation is affected by the undisputed evidence that John Baptie chose to follow Mr. Bruno behind the Walmart as opposed to walking away from the situation. This decision of John Baptie to enter into an altercation with a man that he knew had a serious criminal history and who had recently made death threats against him and his family is a critical event in the chain of events leading to the death. Neither the encounter in which John Baptie chose to follow Jon Bruno behind Walmart nor the stabbing itself were foreseeable consequences of the manner in which Officer McNeil conducted his investigation nor did they occur in a natural and continuance sequence from the investigation; rather they were independent, intervening events in the chain of causation.

Because Plaintiffs are unable to present sufficient evidence as a matter of law on the necessary elements of causation, Defendant McNeil is entitled to summary judgment on the claim of negligence against him, and it is unnecessary to address the parties' arguments with respect to the duty element. Nonetheless, in this kind of case, there is a close relationship between causation and duty, and the duty element merits attention.

There is generally no legal duty to protect someone from intentional crimes committed by a third party. See *Edson v. Barre Supervisory Union No. 61*, 2007 VT 62, ¶ 13, 182 Vt. 157 (crimes committed by a third party are generally "within the realm of the unforeseeable, and therefore cannot form the basis for liability").

In order for a defendant to be held liable for negligence based on a crime of a third party, the defendant must have special knowledge or notice, allowing for the imposition of a duty. See *id*. This notice must be such that would cause the defendant to anticipate harm to a plaintiff caused by the intentional acts of a third party. *Compare Sabia v. State*, 164 Vt. 293, 305-06 (1995) (holding that Department of Social and Rehabilitation Services (SRS) had a duty to prevent further child abuse when it was notified of ongoing abuse based on the special relationship between the agency and a specifically identified abused child) *with Estate of Sumner v. Dept. of Social & Rehabilitation Servs*, 162 Vt. 628, 629 (1994) (mem.) (holding that SRS had no duty to prevent a murder by one of its charges when it had no notice of facts upon which it should have foreseen a serious danger from the murderer).

Plaintiffs argue that Officer McNeil would have been on notice that Mr. Bruno was violent if he had conducted a more aggressive investigation. The undisputed facts show that Officer McNeil was not aware of Mr. Bruno's history of violence at the time of his investigation.

Because Plaintiffs evidence is not sufficient to support jury findings on the necessary elements of causation and duty, Defendant McNeil is entitled to summary judgment on the negligence claim.

*Qualified Immunity*

Even if Plaintiffs had evidence on each of the elements of a prima facie case of negligence, Officer McNeil would still be immune from suit under the doctrine of qualified immunity because his actions were discretionary acts of a police officer investigating a crime. *Livingston v. Town of Hartford,* 2009 VT 54, ¶ 13, 186 Vt. 547, 550.

This is the most obvious difference between this case and the recent Vermont Supreme Court case, *Kennery v. State*, 2011 VT 121, upon which the Plaintiffs rely. *Kennery* concerned a "welfare check" by two Vermont State Troopers. Lorraine Kennery contacted the Vermont State Police because she was concerned that her elderly mother, Gladys Kennery, had not checked in with her as planned upon returning home from a doctor's appointment. Lorraine Kennery gave the State Troopers the address of the house to check, but the Troopers mistakenly checked the house across the street. Finding no one, they issued a "be on the lookout" bulletin for Gladys Kennery and left the welfare check open for the next shift. In fact, Gladys Kennery had fallen outside of her home and was discovered by a postal worker the next morning. She later died from hypothermia.

In *Kennery*, the Troopers were undertaking a "welfare check" and were not investigating a potential crime or deciding whether or not to file criminal charges as Officer McNeil was. The Vermont Supreme Court, by citing to its earlier decision in *Kane v. Lamothe,* 2007 VT 91, 182 Vt. 241, made it clear that, the holding in *Kennery* notwithstanding, police officers exercising their discretion in investigation potential crimes, filing charges, and deciding whether to arrest suspects remain immune from suit:

> In *Kane,* an officer exercised his professional judgment not to arrest a domestic violence perpetrator, and the victim alleged that that omission was gross negligence. We concluded that even if the officer should have more thoroughly investigated the circumstances and exercised his discretion differently, the omission did not rise to gross negligence as a matter of law. The main difference between this case and *Kane* lies in the nature and extent of the discretion involved. *Kane* involved the professional discretion, based upon training and experience, to determine whether arrest was the right remedy to the circumstances the officer encountered. This case involves the very limited discretion to find the right house based on the instructions given by decedent's daughter. We cannot conclude that the discretion in this case precludes a jury finding of gross negligence.

*Kennery v. State*, 2011 VT 121, ¶ 42, n.4. Here, Officer McNeil was exercising his professional discretion as a police officer in investigating the threatening phone call, in deciding to charge Jon Bruno with harassment by telephone, and in deciding to issue a citation rather than choosing to arrest Mr. Bruno. These discretionary actions entitled Officer McNeil to immunity.

Plaintiffs argue that Officer McNeil's failure to take more aggressive steps in the investigation and his personal animosity to Thomas Baptie and by extension to the Baptie family could be the basis for a jury to decide that Officer McNeil showed disregard for and indifference about the duty of care he owed to Tom and John Baptie, and was therefore grossly negligent to the extent that his investigation was not conducted in good faith which would be sufficient to overcome qualified immunity. See *id*. at ¶ 43 (stating that qualified immunity applies only to actions that occur within the scope of employment, are made in good faith, and are discretionary). They urge the court to let the matter be decided by the jury.

It is Plaintiffs' burden, however, to offer sufficient evidence upon which a jury could make a finding of gross negligence and/or bad faith. Even using the standards in the cases relied on by Plaintiffs in their brief, *Hardingham v. United Counseling Serv. Of Bennington County, Inc.,* 164 Vt. 478 (1995); *Shaw, Adm'r v. Moore*, 104 Vt 529, 531 (1932), Plaintiffs have not shown sufficient evidence upon which a jury could find that Officer McNeil failed to exercise even a slight degree of care, or was indifferent to his obligation to investigate and follow through with the matter. The standard requires more than an error of judgment, and Plaintiffs' evidence does not meet that standard.

Count IV: Intentional Infliction of Emotional Distress

Officer McNeil also moves for summary judgment on Plaintiffs' intentional infliction of emotional distress ("IIED") claim. IIED requires Plaintiffs to show "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1. None of the conduct at issue here rises to this level. Officer McNeil's behavior in investigating the harassment by telephone complaint and attempting to serve a citation was not outrageous or beyond the bounds of decency. Officer McNeil is entitled to summary judgment on the IIED claims.

Count V: Breach of Ministerial Duties

Plaintiffs rely on *Kennery v. State*, 2011 VT 121, in arguing that Officer McNeil was performing a ministerial act, and not a discretionary act, and is thus not protected by the doctrine of qualified immunity. Specifically, they argue that the act of conducting a background check on Jonathan Bruno, which they argue was done negligently, was a ministerial function, and that following police procedures is also a ministerial function. The context of all Officer McNeil's actions was in the course of investigating the crime itself and the person who did it, making the discretionary decision about whether to pursue a criminal charge, and deciding whether to make an arrest or issue a citation, and how and where to serve the defendant with a citation. These are all inherently discretionary functions of police officers. Defendant McNeil is entitled to summary judgment on this issue.

Count VI:  Bad Faith

In order to be immune from tort liability under the doctrine of qualified immunity, a police officer must be performing a discretionary act in good faith during the course of his employment and within the scope of his authority. *Livingston v. Town of Hartford,* 2009 VT 54, ¶ 13, 186 Vt. 547, 550.  Plaintiffs claim that Officer McNeil is not entitled to qualified immunity because he acted in bad faith.  Their argument on this point is essentially the same as their argument that Officer McNeil was grossly negligent, that is that he was motivated by personal animosity and failed to pursue the investigation aggressively and arrest the defendant. **"**Good faith exists where an official's acts did not violate clearly established rights of which the official reasonably should have known." *Murray v. White*, 155 Vt. 621, 630 (1991). The test for bad faith is an objective one and the official's subjective mindset is ordinarily irrelevant. *Heleba v. Allbee*, 160 Vt. 283, 288 (1992).   There are insufficient facts upon which a jury could make a finding of bad faith.  Officer McNeil is therefore not deprived of qualified immunity for his actions in this case.

Count VII:  Punitive Damages

Because Officer McNeil is entitled to summary judgment on all claims of liability as set forth above, punitive damages are not available. See *Pion v. Beam*, 2003 VT 79, ¶ 44, 176 Vt. 1 (stating that trial court can only award punitive damages if it has awarded compensatory damages).

**ORDER**

For the foregoing reasons, Defendant Aron McNeil's Motion for Summary Judgment is *granted*.  Attorney Carroll shall prepare a form of judgment.

Dated this 2nd day of August, 2012.

_____
Hon. Mary Miles Teachout
Superior Court Judge

8