*Trafton v. Champlain Housing Trust*, No. 240-3-17 Cncv (Mello, J., Mar. 19, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Chittenden Unit | Docket No. 240-3-17 Cncv |

| | |
|---|---|
| JAMES TRAFTON,<br>　　　　Plaintiff,<br><br>v.<br><br>CHAMPLAIN HOUSING TRUST,<br>　　　　Defendant. | |

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a suit by a tenant against his landlord for personal injuries allegedly sustained when the tenant was assaulted by a third-party, who was residing in another building in the landlord's development. Plaintiff James Trafton alleges that Defendant Champlain Housing Trust is liable for the assault, and for his resulting injuries, because its property manager knew that the assailant was residing in one of its buildings in the development, knew or should have known that the assailant posed a significant risk of harm to tenants in the development, and did nothing to remove the assailant from the development or to warn the other tenants about the risk he posed. Presently before the court is the Defendant's motion for summary judgment, arguing that it owed no duty to control the actions of the assailant. Plaintiff is represented by Brooks G. McArthur, Esq. and David J. Williams, Esq. Defendant is represented by Richard H. Wadhams, Jr., Esq.

Facts

The following facts are undisputed unless otherwise noted.

Defendant Champlain Housing Trust ("CHT") is an independent 501(c)(3) non-profit organization with its principal place of business in Burlington, Vermont. CHT owns and/or manages affordable housing facilities in several locations throughout Northwestern Vermont, including the "South Meadow Community." This community (hereinafter "South Meadow") consists of several buildings containing some 116 rental units owned by CHT on South Meadow Drive, Baird Street and Raymond Place in Burlington. Steve Vasseur is CHT's senior property manager for South Meadow. Vasseur works onsite daily, full-time; part of his job responsibilities is to handle complaints by residents at South Meadow.

Plaintiff rents an apartment unit in the Defendant's building at 92 South Meadow Drive. Plaintiff has lived in this apartment for over seventeen years. On September 3, 2016, Plaintiff was assaulted by Aaron Twitty outside of 28 Baird Street, one of CHT's other buildings at South

Meadow. According to the Plaintiff, Twitty had been residing with his girlfriend, Shateena Morris, at 28 Baird Street for a considerable period of time prior to the assault, an allegation that CHT denies for lack of knowledge. It is undisputed that Twitty had no lease with CHT at the time of the assault, he was not authorized to be living in any unit in South Meadow at the time, and, if he was living with a resident there, his doing so would have been in violation of an express provision of that resident's lease with CHT. None of CHT's employees knew that the assault was taking place when it occurred.

## Discussion

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See <u>H&E Equip. Servs., Inc. c. Cassani Elec., Inc.</u>, 2017 VT 17, ¶ 10; V.R.C.P. 56(a). The non-moving party is entitled to "the benefit of all reasonable doubts and inferences." <u>Campbell v. Stafford</u>, 2011 VT 11, ¶ 10, 189 Vt. 567 (quotation omitted). In addition, "[s]ummary judgment is not a substitute for a determination on the merits, so long as evidence has been presented which creates an issue of material fact, no matter what view the court may take of the relative weight of that evidence." <u>Fritzeen v. Trudell Consulting Engineers, Inc.</u>, 170 Vt. 632, 633 (2000) (mem.).

CHT contends that it is entitled to judgment in its favor as a matter of law because, under the facts of this case, it had no legal duty to control Twitty or to protect Plaintiff from being assaulted by him. In support of this contention, CHT asserts that it had no lease or other relationship with Twitty, it did not know that Twitty was residing at South Meadow, it had not received any complaints about Twitty, it had had no reason to know that Twitty might assault the Plaintiff, and no CHT personnel were present when the assault occurred.

Plaintiff opposes the motion on the grounds that there are disputed material facts that preclude granting summary judgment in Defendant's favor. In support of his opposition, Plaintiff has come forward with affidavits asserting that CHT's on-site property manager had known that Twitty was living at South Meadow prior to the assault, that the manager had received complaints about Twitty, and that he had assured at least one tenant that CHT was taking action to remove Twitty from South Meadow.

In order to succeed on a negligence claim, a plaintiff must establish: "(1) that the plaintiff was owed a legal duty by the defendant; (2) that the defendant breached that duty; (3) that the defendant's conduct was the proximate cause of the plaintiff's injuries; and (4) that the plaintiff suffered actual damage as a result of the negligence." <u>Gilman v. Maine Mut. Fire Ins. Co.</u>, 2003 VT 55, ¶ 15, 175 Vt. 554 (mem.). "The existence of a duty is a question of law to be decided by the court." <u>Kuligoski v. Brattleboro Retreat</u>, 2016 VT 54A, ¶ 19 (quoting <u>Sorge v. State</u>, 171 Vt. 171, 174 (2000)).

Generally, there is no legal duty to protect another from intentional crimes committed by a third party. <u>Edson v. Barre Supervisory Union #61</u>, 2007 VT 62, ¶ 13, 182 Vt. 157 ("In general, crimes committed by a third party fall within the realm of the unforeseeable, and therefore cannot form the basis for liability"). There are, however, exceptions to this general rule. The pertinent section of the Restatement provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection.

Restatement (Second) of Torts § 315 (1965). Plaintiff does not claim that CHT had the kind of special relationship with Twitty that would have imposed on it a duty under § 315(a) to control his conduct. Plaintiff claims, rather, that, by virtue of his landlord-tenant relationship with CHT, he had a "right to protection" at South Meadow, and, therefore, CHT had a duty under § 315(b) to protect him from Twitty.

In Edson, where a "right to protection" had arisen by virtue of the relationship between the defendant school district and its subsequently-murdered thirteen-year-old student, the Vermont Supreme Court held that "a defendant may be responsible for protecting against the criminal act of another … only where the defendant had special knowledge or notice upon which to impose a duty to anticipate the wrongful act." Id. ¶ 13.

In Harrington v. Rheaume, 2012 WL 4294066 (Superior Court, Rutland Unit, July 9, 2012), Superior Judge Teachout followed Edson in a landlord-tenant case factually quite similar to the case at bar. The defendant in Harrington had assaulted the plaintiff, the guest of a tenant, after having head-butted another tenant in the building five months earlier. Judge Teachout nevertheless granted summary judgment in favor of the landlord. Applying the Edson standard, Judge Teachout held that the question of duty turned on the foreseeability of harm to the plaintiff. "If the harm was not foreseeable, then Defendants did not owe Plaintiff a duty of care to prevent it." Harrington, *2. Judge Teachout concluded:

> [T]he single, relatively minor head-butting incident was not sufficient to put Defendants on notice that Mr. Rheaume posed a threat to Plaintiff or others in the apartment building. Therefore, no 'special circumstances' were present, and, consistent with general principles of tort law, Defendants' duty of reasonable care did not include a duty to take action to prevent the criminal actions of a third party."

Id. at *3 (quoting Doyle v. Exxon Corp., 592 F.2d 44, 46-47 (2d Cir. 1979) ("In order for a landlord to have a duty to protect tenants from third party crimes, there must be 'special circumstances' outside the ordinary course of the landlord-tenant relationship…. Factors influencing whether or not a duty exists include 'the degree of control possessed by the landlord, the foreseeability of the danger, the extent to which the landlord had undertaken specific protective measures, and the adequacy of the evidence supporting the essential element of proximate causation.'").

Plaintiff has filed an affidavit with the court stating that on the day he was assaulted he had been at his daughter's apartment at 84 South Meadow Drive, when a teenager knocked a

wine glass out of his wife's hand. Plaintiff followed the young man to the building at 24-28 Baird Street, in an effort to talk to one of the parents about their son's behavior. The young man threw rocks at the Plaintiff as Plaintiff tried to follow him. When Plaintiff approached the building at 24-28 Baird Street, two women and a man came out and started swearing and cursing at the Plaintiff. Plaintiff spoke briefly with the man and then started walking away from him, whereupon the man punched Plaintiff in the face, causing him to drop to the ground. Two days later, Plaintiff had a conversation with CHT's on-site property manager, Steve Vasseur. Vasseur told Plaintiff that the assault had been captured by an S.D. Ireland Construction Company surveillance camera, that he (Vasseur) had seen the video, and that it had been Aaron Twitty who had committed the assault. Vasseur told Plaintiff that "Twitty was related to the Stewart family which also resided in the Sough Meadow complex," and that "he knew Twitty and that Twitty was nothing but trouble." (Affidavit of James Trafton, ¶¶ 3-18).

Plaintiff has also submitted an affidavit of Michael Levine, who has resided at 22 Baird Street since June of 2015. His apartment is located downstairs from the apartment where Twitty was living at the time of the assault. According to Levine, the upstairs tenants moved in around May of 2016, and "[t]here were problems with those tenants almost immediately after they moved in" (Affidavit of Michael Levine, ¶ 4). The upstairs tenants "were parking cars in places that blocked entrances and the sidewalk," groups of 15-20 people congregated outside their apartment and used the garage as a "hang out," there was "a persistent smell of marijuana and … loud music coming from their apartment," and they had a pitbull dog even though no dogs were allowed in the building (Id., ¶¶ 4-5). Levine also "suspected there was drug dealing going on in that apartment" because "[c]ars would pull up at all hours of the day and into the late night and early morning hours and people would stay just a few minutes and then leave" (Id., ¶ 6). Levine adds:

> I approached Property Manager Steven Vasseur about my concerns several times throughout the Summer of 2016. Some of these discussions were by phone and I also sent several complaints to him via email. I complained to Vasseur about the noise, the marijuana smell, the blocking of entrances and the suspected drug dealing. I told Vasseur that I was considering moving out because of them. We were afraid in our own home.
>
> Vasseur told me he was aware of the problems and was "working on it". He told me, "Just know they won't be here much longer. It's in our lawyer's hand and as soon as they get through with it, he'll be out". Vasseur asked to just give him some more time and there was "more than what you are seeing going on". I would estimate I had 8-10 contacts with Steve Vasseur including emails and phone calls.

(Id., ¶¶ 8-9). Levine's wife had also complained to CHT about the upstairs tenants, and Levine had complained to the police on several occasions (Id., ¶ 12).

The Plaintiff in his affidavit also mentions having complained to Vasseur about suspected drug activity at his daughter's apartment in South Meadow, where the young man had knocked the wine glass out of his wife's hand. "According to the Plaintiff, "[b]efore I was assaulted by Twitty, I had complained to Steve that I suspected the people living in my daughter's building were dealing drugs because I would see vehicles pull up to the apartment and leave a short time later at all hours of the night" (Trafton Affidavit, ¶ 21). Two days after the assault, Vasseur told the Plaintiff that those people "were trouble and they would be gone soon" (Id., ¶ 20).

The Plaintiff has also submitted to the court documentation that Aaron Twitty had a criminal record, which CHT could have learned about had it inquired. Twitty's record included a conviction in 2009 for unlawful trespass after he violated a no trespass notice served on him by University Mall security officers, a 2009 conviction for conspiracy to distribute marijuana to someone who had purchased marijuana from Twitty three or four times before his arrest on that charge, and a 2013 conviction for aggravated assault after he punched two people at the Lift night club, one of whom suffered a fractured orbital bone and a broken nose in the assault.

Lastly, Plaintiff has also submitted to the court a 1994 publication of the Drugs & Crime Data Center & Clearinghouse entitled "Fact Sheet: Drug-Related Crime." The publication, which "summarizes the various ways that drugs and crime are related," states, among other things, that "[d]rugs are … related to crime through the effects they have on the user's behavior and by generating violence and other illegal activity in connection with drug trafficking."

Plaintiff has come forward with sufficient evidence to support a finding that, at the time Twitty assaulted the Plaintiff, CHT "had special knowledge or notice upon which to impose a duty to anticipate the wrongful act." Edson, 2007 VT 62, ¶ 13. CHT's full-time, on-site property manager had received numerous complaints about the upstairs tenants at 24-28 Baird Street, including complaints of lease violations, unlawful drug use and suspected drug dealing. The Plaintiff had also complained of suspected drug dealing at the building where his daughter resided, and where he had confronted the young man who had knocked a wine glass out of his wife's hand and then thrown rocks at him all the way to 24-28 Baird. One tenant (Levine) had informed CHT's property manager that he and his family were "afraid in our own home" and were "considering moving out because of them." Based upon these reports, CHT should have foreseen that South Meadow residents like the Plaintiff might be the victims of drug-related violence and crime, including the kind of assault that the Plaintiff experienced, if CHT failed to take action to remove them from the premises.

In addition, Plaintiff has come forward with evidence suggesting that CHT and its property manager had in fact concluded, before the Plaintiff's assault, that the upstairs tenants, including Aaron Twitty, were "nothing but trouble" and needed to be removed from the premises in order to keep the law-abiding residents of South Meadow safe. CHT's property manager had told tenant Michael Levine that "he was aware of the problems" with the upstairs tenants and "was 'working on it,'" that "[i]t's in our lawyer's hand," and that the upstairs tenants "won't be here much longer." Two days after the assault, CHT's property manager admitted to the Plaintiff that "he knew Twitty and that Twitty was nothing but trouble."

This evidence, that CHT had foreseen the risk of potential harm and had acknowledged (to Levine) its responsibility as landlord to protect its tenants from that risk of harm, supports the Plaintiff's contention that CHT had a duty of care and breached it.  *See* Deveneau v. Weilt, 2016 VT 21, ¶ 8, 201 Vt. 396 ("But 'whether there is a cognizable legal duty that support a [particular] tort action depends on a variety of public policy considerations and relevant factors'….  It is 'a question of fairness that depends on, among other factors, the relationship of the parties, the nature of the risk, … the public interest at stake,' and the foreseeability of the harm….  Implicit in these considerations is the 'basic tort rule that duty is measured by undertaking.").  *See also* Luisa R. v. City of New York, 253 A.D.2d 196, 200 (N.Y.1999) ("Plaintiff has raised a triable issue of fact as to whether her injuries were a foreseeable result of defendant's inaction in failing to remove the drug dealers from the building….").

Order

For the reasons stated above, Defendant's motion for summary judgment is *denied*.

SO ORDERED this 19th day of March, 2018.

_____
Robert A. Mello, Superior Judge